AAA UNIFORM AND LINEN
SUPPLY, INC.,
Appellant,

v.

BAREFOOT, INC., d/b/a Snake
'N' Rooter of Kansas City,
Respondent.

No. WD 57092.

Missouri Court of Appeals,
Western District.

May 16, 2000.

Alan B. Gallas, Kansas City, for appellant.

Anthony A. Stein, Kansas City, for respondent.

Before JOSEPH M. ELLIS, P.J.,
PAUL M. SPINDEN and THOMAS H.
NEWTON, JJ.

THOMAS H. NEWTON, Judge.

AAA Uniform and Linen Supply, Inc. (AAA Uniform) sued Barefoot, Inc., d/b/a Snake 'N' Rooter of Kansas City (Barefoot) for balances due on its account and for breach of contract. After a court trial, AAA Uniform received judgment for $1,533.37 on the account action; Barefoot prevailed on the breach of contract action. AAA Uniform appeals the trial court's ruling that the contract had been rescinded by mutual consent. We reverse the judg-

ment and remand the case for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

For years, Paul Heilman of AAA Uniform and Jeff Barefoot of Barefoot, were colleagues in the garment rental industry. When Mr. Barefoot acquired the drain cleaning and plumbing company in 1994, he contracted with Mr. Heilman for AAA Uniform to supply uniforms, towels, and mats.

In 1994 and 1996, AAA Uniform and Barefoot entered into written service rental agreements for three-year terms. Under the agreements, AAA Uniform provided Barefoot with weekly services by delivering clean uniforms, towels, and mats. The agreements provided for cash on delivery, but allowed for approval of a ledger account. Through special arrangements of the parties, Mr. Barefoot paid flat amounts each month and paid the additional amounts due at the end of the year. The flat monthly payments increased from $400 in 1994, to $600 in 1995, and to $700 in 1996.

Business relations between AAA Uniform and Barefoot eventually became strained. AAA Uniform responded to Barefoot's increased needs for uniforms, but the flat monthly payments left balances due at the end of the month. On numerous occasions, Mr. Heilman wrote Mr. Barefoot asking that the flat payments be increased. In early October 1997, Mr. Barefoot telephoned Mr. Heilman with complaints about the quality of the uniforms and the services. During that conversation, Mr. Heilman became angry and proposed picking up the rental merchandise from Barefoot if Mr. Barefoot did not like the services.

The business relationship between AAA Uniform and Barefoot ended after the exchange of letters. In AAA Uniform's certified letter dated October 9, 1997, Mr. Heilman acknowledged receipt of $1,400 from Barefoot, but noted a remaining past due balance of $1,092.76. The letter demanded payment of the balance due by October 21, 1997 to continue business with AAA Uniform, and specified that Barefoot's account would become cash on delivery on October 23, 1997 unless the balance due were paid in full. The letter concluded with a reference to Paragraph 4 of the 1996 rental service agreement. That provision allowed AAA Uniform to terminate the contract for any payment ten days overdue and to hold the customer liable for breach of contract. In Barefoot's responsive letter dated October 20, 1997, Mr. Barefoot reiterated his complaints about the services and notified Mr. Heilman that he could go ahead and discontinue the services as he had threatened. The letter noted that the rental merchandise was awaiting pick-up. AAA Uniform collected its merchandise and stored it in a warehouse. Barefoot engaged a new supplier for its uniforms.

In the action for breach of contract, AAA Uniform sought damages based on provisions of the 1996 rental service agreement. Paragraph 3 provided for liquidated damages by requiring the customer who cancelled the contract before its expiration to purchase of the rental inventory at thirty percent below the retail price and to pay lost profits of fifteen percent of the average weekly rental volume for the remaining weeks of the agreement. At the two-day court trial, Barefoot presented defenses of anticipatory repudiation, modification of the contract, lack of fair dealing, and unreasonable liquidated damages.

After taking the case under advisement, the trial court concluded that a mutual rescission of the contract had occurred, and denied AAA Uniform's action for breach of contract. In the judgment, the trial court found that AAA Uniform's October 9th letter constituted an offer to rescind the contract, and that Barefoot's October 20th letter accepted that offer. The trial court then concluded that AAA Uniform was not entitled to liquidated dam-

ages for breach of contract. AAA Uniform appeals.

## II. STANDARD OF REVIEW

 Appellate review in this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): the trial court's judgment will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Of significance here is the proviso in *Murphy v. Carron* that can indicate a reversal when the trial court misapplies the law. In this situation, the appellate court independently evaluates the trial court's application of the law. *Burns v. Plaza West Associates*, 979 S.W.2d 540, 545–46 (Mo.App. W.D. 1998).

## III. LEGAL ANALYSIS

Appealing the denial of its breach of contract action, AAA Uniform challenges the trial court's ruling that the parties mutually rescinded the 1996 service rental agreement. In support, AAA Uniform asserts that the letters exchanged failed to amount to an unequivocal offer and acceptance of a rescission. AAA Uniform also stresses that neither party presented any evidence of mutual rescission.

 To establish rescission by mutual consent, the contracting parties' acts and declarations must be inconsistent with the continued existence of the previous contract. *See Tahan v. Garrick, Inc.*, 701 S.W.2d 189, 191 (Mo.App. E.D.1985). Moreover, proof of rescission must be clear, positive, unequivocal, and decisive, and it must manifest the parties' actual intent to abandon contract rights. *Cf. McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 173 (Mo. banc 1999).

 In determining that a rescission by mutual consent had occurred, the trial court misapplied the law. Contrary to the trial court's findings, AAA Uniform's October 9 th letter contained no offer to rescind the contract. The letter stated in part:

Snake and Rooter owes $203.56 for August and the September balance of $889.20.

This $1,092.76 must be received [in] our office no later than Tuesday, October 21, 1997 to continue business with our company.

Your account will be COD effective Thursday, October 23, 1997 unless the $1,092.76 is paid in full before this date.

This notice references Paragraph # 4 in the rental agreement dated April 1, 1996.

That letter demanded payment in full and referred to the breach of contract provisions in the 1996 rental service agreement (paragraph # 4). Nothing in the October 9 th letter shows an unequivocal intent to abandon contract rights. As a matter of law, the October 9 th letter was not an offer to rescind the contract.

It becomes even more apparent that the parties did not intend a mutual rescission of the contract after a review of Barefoot's October 20 th letter. The letter stated in part:

Last month, for the first time, your invoice was overlooked and when I recognized it, I sent both the previous month and the current month at the same time. For that, do you think I deserve a letter that demands payment and also threatens to discontinue doing business with us?

* * *

Paul, based on the fact that I have known you for years, I have overlooked a number of issues that have always bothered me. However, what has transpired recently has taken this to another level. You have forced me into a business decision that will probably be to the best interest of both parties. I can not continue to run my business with a vendor that is threatening and demeaning in his nature. It is unprofessional and

unacceptable and based on a business code of ethics, should not have to be tolerated.

I will use your own effective date of Thursday, October 23, 1997. At that time, you can go ahead and discontinue your service, as you threatened. We will have all garments collected awaiting your pick-up. You have left us with no recourse but to look for a stable supplier.

Clearly, the tone of this letter is not that of an agreeable situation. Barefoot, to use his term, is responding to threats, and decides to discontinue the business relationship. Thus, Barefoot's October 20 th letter could not constitute an acceptance of a nonexistent offer.

■ Furthermore, in this case, neither party's pleadings or evidence raised the issue of mutual rescission of contract. A trial court's power to decide questions is limited to those matters presented in the pleadings or tried by express or implied consent. *See UT Communications Credit Corp. v. Resort Development, Inc.*, 861 S.W.2d 699, 706, 707 (Mo.App. E.D.1993).

### CONCLUSION

We reverse the judgment on the breach of contract action, and remand the case to the trial court for further proceedings. On remand the trial court should take additional evidence and hear argument as it deems necessary.

ELLIS and SPINDEN, JJ., concur.