**MODIFIED 5/27/14**



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ERICKA J. SAUVAIN, AMY LEIGH SAUVAIN, by Next Friend, ERICKA J. SAUVAIN, and BONNIE S. HUGHES, | ) ) ) ) | |
| Respondents, | ) ) | WD76356 |
| v. | ) ) ) ) | OPINION FILED: April 22, 2014 |
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Anthony Rex Gabbert, Judge**

**Before Division I:** Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Acceptance Indemnity Insurance Company ("Acceptance") appeals from the judgment of

the Circuit Court of Clay County, Missouri ("trial court"), after a bench trial, in favor of Ericka J.

Sauvain, Amy Leigh Sauvain, and Bonnie S. Hughes (collectively, "Plaintiffs") and against

Acceptance on Plaintiffs' equitable garnishment claim. In its sole point on appeal, Acceptance

argues:

> The trial court erred in entering judgment in favor of Plaintiffs and against
> [Acceptance] because its finding that the parties did not intend a transfer of

ownership at the time of the collision was against the weight of the evidence *and* not supported by substantial evidence in that the evidence presented at trial *supported a conclusion* that the parties did in fact intend to transfer ownership of the [Vehicle] on March 24, 2005.

(Emphasis added.)[1]

We affirm.

## Factual and Procedural History[2]

This is not the first appeal of this equitable garnishment action. We previously considered appeal of the trial court's ruling that granted summary judgment to Plaintiffs in *Sauvain v. Acceptance Indemnity Insurance Co.*, 339 S.W.3d 555 (Mo. App. W.D. 2011) *("Sauvain I")*. In *Sauvain I*, we concluded that the undisputed facts of this case were not sufficient for either party to be entitled to summary judgment; hence, we remanded the case for a trial. It is in this vein that we review the factual and procedural history of this case.

In a separate underlying lawsuit, Plaintiffs brought suit alleging that David Bowman, Jr.'s ("Bowman Jr.") negligence caused a head-on vehicular collision with a vehicle operated by John Sauvain, III ("Sauvain") in Barry County, Missouri, on April 30, 2005. Bowman Jr. was driving a 1998 Ford Contour ("the Vehicle") at the time of the collision, and Sauvain was driving a 1998 Ford Escort. Bonnie Hughes ("Hughes") was a passenger in Sauvain's car. Sauvain died from the injuries he sustained in the collision, and Hughes suffered serious physical injuries.

---

[1] As our ruling today explains, it is immaterial whether the evidence "supported a conclusion" contrary to the trial court's conclusion. That is not the test for reversing this bench-tried case. Instead, Acceptance needed to demonstrate that the totality of the evidence on vehicle ownership only supported *one* conclusion—the conclusion Acceptance argued. We mention this to underscore the fatal defect in the rationale of the claimed trial court error in this appeal. Additionally, as we explain in our ruling today, "against-the-weight-of-the-evidence" challenges are not the same as "not-supported-by-substantial-evidence" challenges; hence, pursuant to Rule 84.04, these separate and distinct challenges should have been separated into two distinct points relied on. *State v. Brightman*, 388 S.W.3d 192, 196 (Mo. App. W.D. 2012). "'Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal.'" *Id.* (quoting *State v. Agee*, 350 S.W.3d 83, 97 (Mo. App. S.D. 2011)). That said, we have exercised our discretion to examine the substance of Acceptance's claimed errors.

[2] On appeal after a bench trial, an appellate court views the facts in the light most favorable to the trial court's judgment. *Rissler v. Heinzler*, 316 S.W.3d 533, 535 n.1 (Mo. App. W.D. 2010).

2

Prior to the collision, David H. Bowman, Sr. ("Bowman Sr.") took his son, Bowman Jr., to a used car dealer for the purpose of looking for a car that Bowman Sr. wanted to purchase for Bowman Jr. as a wedding present. The Bowmans went together to USA Cars, Inc. ("USA Cars"), located in Wylie, Texas, which was near where the Bowmans were living at that time.

Eventually, on March 24, 2005, Bowman Sr. signed a document provided by USA Cars to purchase the Vehicle from USA Cars for $4,257. No representative for USA Cars signed the purchase agreement, and the agreement expressly stated that the signature of both parties was required before there would be a binding contract between the parties. Notwithstanding this fact, Bowman Sr. paid the sales price in full, was given a receipt and the car keys by USA Cars, and Bowman Sr. drove the Vehicle off the lot on that day. However, no title was provided by USA Cars to Bowman Sr. at that time, nor by the time of the fatal collision, which occurred some five weeks later (even though USA Cars had promised that title would be provided within one week). Bowman Sr. did not consider the sale of the Vehicle complete until title was provided by USA Cars and expected a full refund if USA Cars was unable to provide clean title to the Vehicle. During this period of "title limbo," Bowman Sr. contacted USA Cars both to question the whereabouts of title to the Vehicle and also to seek the permission of USA Cars to drive the Vehicle on USA Cars' temporary tags into the state of Missouri. In response, instead of indicating to Bowman Sr. that he, not USA Cars, owned the Vehicle, a representative of USA Cars stated that it was "still working on the title, but it shouldn't be a problem if you go out of state. You're covered." The fatal car wreck involving the Vehicle ensued on April 30, 2005.

The accident report prepared by the Missouri State Highway Patrol trooper in connection with the April 30 fatal car wreck listed the owner of the Vehicle as USA Cars. USA Cars did not

release its lien on the Vehicle until May 23, 2005, and did not provide the title to the Vehicle to Bowman Sr. until June 3 or 4, 2005, well after the April car wreck.

Acceptance issued USA Cars a "garage" insurance policy ("USA Policy" or "the Policy") that insured USA Cars from March 16, 2005, to March 16, 2006. Pursuant to the Policy's terms, Acceptance agreed to insure USA Cars from loss on certain "autos" that were "owned" by USA Cars. For the purposes of this case, the Vehicle was one such "auto," to the extent it was "owned" by USA Cars as of the date of the April car wreck.

In the separate underlying bench trial against Bowman Jr. in Clay County Circuit Court, the circuit court found Bowman Jr. liable and entered a judgment against him and in favor of Plaintiffs. Specifically, Sauvain's heirs were awarded $2,000,000, and Hughes was awarded $4,000,000. Prior to the trial in the underlying lawsuit, Plaintiffs entered into a settlement agreement pursuant to section 537.065, RSMo, with Bowman Jr., and in addition, Bowman Jr.'s personal auto liability insurer, USAA, agreed to pay its policy limits of $50,000 on behalf of Bowman Jr.

Plaintiffs brought the subject equitable garnishment action in the Clay County Circuit Court against Acceptance for the purpose of garnishing insurance proceeds they claimed were to be provided under the terms of the USA Policy. The gravamen of the lawsuit was that this was an additional insurance policy that covered the Vehicle (and hence provided liability coverage up to the policy limits of $100,000 to the Vehicle's permissive driver) at the time of the wreck.

Plaintiffs alleged that the USA Policy covered the Vehicle because the automobile "was titled to and owned by USA Cars" on the date of the accident. Plaintiffs sought to have the insurance proceeds provided for in the Policy applied to the partial satisfaction of the underlying

4

$6,000,000 judgment against Bowman Jr., the permissive driver of the Vehicle at the time of the wreck.

After the current action was filed, Plaintiffs and Acceptance filed opposing summary judgment motions as to the Policy coverage on the day of the accident. The trial court issued a judgment that granted Plaintiffs' motion for summary judgment and denied Acceptance's motion for summary judgment. Acceptance appealed both rulings to this court.

In *Sauvain I*, we concluded that the trial court erred in granting Plaintiffs' motion for summary judgment because the trial court erroneously focused on whether the purchase agreement was fully executed, and not on the relevant test under Texas law—whether the uncontroverted facts indicated that the parties intended to effect the transfer of ownership at the time Bowman Sr. took possession of the Vehicle prior to the April car wreck. We also concluded that the trial court did not err in denying Acceptance's motion for summary judgment because there were disputed issues as to the parties' intent to effect the sale of the Vehicle prior to the April car wreck. Of relevance to the action that was ultimately taken by the fact-finder in this case upon remand, we said in *Sauvain I*:

> Here, it was uncontroverted that Bowman, Sr. paid USA Cars the full sales price of $4,257 for the [Vehicle]. Furthermore, it was uncontroverted that USA Cars delivered the vehicle to Bowman, Sr. and that he took possession and control of the vehicle. However, it was also uncontroverted on summary judgment that pursuant to the express terms of the purchase contract used by USA Cars, in order to have a binding contract, the contract had to be signed by both parties and that the purchase agreement in this case was not in fact signed by USA Cars.[3] It is also an uncontroverted fact that Bowman, Sr. called USA Cars to ask permission for Bowman, Jr. to leave the state in the car. Taken together, these facts create a disputed factual issue as to the intent of the parties to effect the sale under [Texas law].

---

[3] We clarified that we were not suggesting that Texas law required that both parties sign an agreement to demonstrate an intent to transfer ownership, but noted that "when the form purchase agreement expressly requires the signatures of both parties to create a binding contract, the absence of one signature is certainly relevant in evaluating whether the parties intended to transfer ownership." *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 567 n.13 (Mo. App. W.D. 2011).

*Sauvain I*, 339 S.W.3d at 567-68.

> We concluded:

> Ultimately, *it is for the fact-finder*, and not the trial court [on summary judgment motion], *to determine whether Bowman Sr. and USA Cars intended "to effect the sale" based on the facts in this case.*

*Id.* at 569 (emphasis added).

Upon remand, the parties appeared before the trial court on December 6, 2012. The parties waived their right to trial by jury and presented the case to the trial court for trial on the merits. After the introduction of evidence and the arguments of counsel, the case was submitted to the trial court for decision.

On January 21, 2013, the trial court entered its judgment, concluding that the collision, which was the subject of the underlying action, was covered by USA Cars' Policy with Acceptance and that Bowman Jr. was an insured under the Policy. The trial court held "that the weight of the evidence in this matter supports the conclusion that the parties did not intend a transfer of ownership at the time of the collision. . . . Because the weight of the evidence supports Plaintiffs' claim for equitable garnishment, this Court holds that Plaintiffs are entitled to judgment against Defendant Acceptance . . . on their claim for equitable garnishment" in the amount of the policy limits of $100,000.[4]

---

[4] *After* this Court's opinion was handed down on April 22, 2014, ruling in favor of Plaintiffs and against Acceptance, *after* Acceptance had represented to this Court in its appellate briefing that it had stipulated to the trial court that the only issue being presented to the trial court for coverage determination was the issue that is presented on this appeal, *after* Acceptance had likewise represented to this Court in its appellate briefing that Acceptance was appealing "from a final Judgment entered by the trial court finding on behalf of plaintiffs and against [Acceptance] as it pertained to Plaintiff[s'] equitable garnishment claim," and *after* Acceptance presented this Court with a copy of the trial court's judgment that expressly found that "the collision which was the subject of the underlying action is covered by [the Policy,] and David H. Bowman, Jr. is an insured under that policy," Acceptance *now* asserts in a May 21, 2014 motion to set aside this Court's opinion arguing that this Court does not have jurisdiction because the trial court did not resolve other coverage issues that Acceptance claims it raised in its counterclaim. This is nothing more than a thinly veiled attempt to resurrect abandoned coverage issues that were withdrawn before the trial court and not argued on appeal. Further, even though the parties stipulated that there was only one coverage issue requiring resolution, the trial court's judgment was not limited to that one issue. Instead, the judgment broadly ruled

Acceptance appeals the trial court's judgment.

## Standard of Review

On appeal of a bench-tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Pearson*, 367 S.W.3d at 43. An appellate court "will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." *Id.*

In reviewing questions of fact, the appellate court defers to the trial court's assessment of the evidence if any facts relevant to an issue are contested. *Id.* at 44. A party can contest the evidence in many ways, including by arguing the meaning of the evidence. *Id.* When the evidence is contested, we defer to the trial court on factual issues; a trial court is free to disbelieve any, all, or none of the evidence, and the appellate court's role is not to re-evaluate the evidence through its own perspective. *Id.* Accordingly, we review the evidence in a light most favorable to the judgment, accept the evidence favorable to the judgment as true, and disregard any contradictory evidence. *HCI Investors, LLC v. Fox*, 412 S.W.3d 424, 429 (Mo. App. W.D. 2013).

---

in favor of Plaintiffs and against Acceptance, expressly concluding that the subject collision was covered by the Policy. Hence, the trial court's judgment resolved *all* claims between the parties relating to coverage under the Policy, and it was a final judgment. This Court possesses jurisdiction to dispose of the present appeal, and Acceptance's motion to set aside is denied.

7

**Analysis**

In its sole point relied on, Acceptance asserts that the trial court erred in entering judgment in favor of Plaintiffs and against Acceptance because the trial court's finding that the parties did not intend a transfer of ownership at the time of the collision was against the weight of the evidence *and* not supported by substantial evidence. Specifically, Acceptance contends that the evidence presented at trial supported *a conclusion* that the parties did intend to transfer ownership of the Vehicle on March 24, 2005.

We begin our analysis by noting that "[t]he trial court's judgment is presumed valid[,] and the burden is on the appellant to demonstrate its incorrectness." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (internal quotation omitted). The two bases of appellate review raised by Acceptance to challenge the evidentiary basis of the trial court's judgment have distinct analytical frameworks.[5] *Id.*

In bringing a not-supported-by-substantial-evidence challenge, Acceptance must: (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; and (3) demonstrate why that supporting evidence, when considered with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition. *Id.* at 187. "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of

---

[5] As the court noted in *Houston v. Crider*, 317 S.W.3d 178, 187 n.9 (Mo. App. S.D. 2010), when confronted with a "not-supported-by-substantial-evidence" challenge and an "against-the-weight-of-the-evidence" challenge in the same point relied on:

> Because each challenge requires differing views of the evidence and how that evidence relates to the evidentiary support for the challenged proposition, best practice would dictate that each challenge should be asserted in separate points relied on. Separating the two challenges in this manner assists an appellant in presenting a clear, cogent, and concise argument for each relying only upon the view of the evidence relevant to that particular challenge. It would also eliminate the natural tendency, which we observe on a regular basis when these challenges are combined in one point, to rely upon and argue evidence and inferences contrary to the proposition in attempting to demonstrate that it is not supported by substantial evidence, when such evidence and inferences are only relevant and material to an against-the-weight-of-the-evidence challenge.

8

fact[ ] can reasonably decide the case." *Id.* at 186 (internal quotation omitted). "[A]ny citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Id.*

On the other hand, in bringing an against-the-weight-of-the-evidence challenge, Acceptance must: (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition. *Id.* at 187. *See also Riley v. City of Liberty*, 404 S.W.3d 434, 440 (Mo. App. W.D. 2013). "[W]eight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Houston*, 317 S.W.3d at 186 (internal quotation omitted).

> [A]n against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact.

*Id.* "[W]here the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations in the same manner as in the resolution of a not-supported-by-substantial-evidence argument." *Id.*

9

At trial, the following evidence supported the trial court's judgment declaring that there was no intent to effect a sale of the Vehicle prior to the April car wreck and that ownership of the Vehicle did not transfer from USA Cars to Bowman Sr. as of the date of the April car wreck involving Bowman Jr.'s use of the Vehicle:

- The purchase order for the Vehicle signed by Bowman Sr. states that "[t]his order shall not become binding until accepted by dealer or his authorized representative."

- The purchase order for the Vehicle signed by Bowman Sr. was not signed by an authorized representative of USA Cars.

- Bowman Sr. did not have to purchase temporary tags when he paid for the Vehicle; when Bowman Sr. drove the Vehicle off USA Cars' lot on March 24, 2005, the Vehicle had tags; USA Cars told Bowman Sr. to use its tags.

- USA Cars did not give Bowman Sr. the certificate of title for the Vehicle before Bowman Sr. drove the Vehicle off USA Cars' lot on March 24, 2005. USA Cars told Bowman that it would have the title for him the following week.[6]

- When Bowman Sr. wrote his check to USA Cars, he intended to receive a title to the Vehicle.

- Subsequent to March 24, 2005, Bowman Sr. called USA Cars on numerous occasions to request the title.

- Bowman Jr. recalled Bowman Sr. calling USA Cars to tell it that Bowman Jr. needed to take the Vehicle out of state and that Bowman Sr. needed to have the title. Bowman Jr.

---

[6] Acceptance argues that facts relating to title of the Vehicle are immaterial to a determination of whether or not the parties intended to transfer ownership of the Vehicle to Bowman Sr. on March 24, 2005; rather, the ownership of the Vehicle is determined by whether Bowman Sr. had the right to possession and the power to control the Vehicle, and whether the parties had the intent to effect the sale. Plaintiffs contend that they are not arguing that transfer of title is determinative of ownership; rather, they are arguing that the facts regarding USA Cars' promise to transfer title and the failure to do so are relevant evidence pertaining to whether there was intent to effect a transfer of ownership of the Vehicle.

stated that USA Cars said it was "still working on the title, but it shouldn't be a problem if you go out of state. You're covered."

- After March 24, 2005, and before receiving title to the Vehicle, Bowman Sr. felt that USA Cars had an obligation to repair the front end of the Vehicle, and if the Vehicle's front end was not repaired, he would take it back and demand a refund.

- Bowman Sr. assumed that USA Cars would give him his money back if it had never been able to get the title to him.

- Bowman Sr. did not receive title to the Vehicle prior to the collision.

- The accident report prepared by the Missouri State Highway Patrol trooper in connection with the April 30, 2005 accident lists the owner of the Vehicle driven by Bowman Jr. as USA Cars.

- The title to the Vehicle that Bowman Sr. finally received was dated April 8, 2005, and listed USA Cars as the owner of the Vehicle.

- USA Cars did not release its lien on the Vehicle until May 23, 2005.

- Bowman Sr. did not receive the certificate of title for the Vehicle from USA Cars until June 3 or 4, 2005.

On appeal, Acceptance correctly identified the disputed factual proposition: whether Bowman Sr. and USA Cars intended to effect a sale of the Vehicle on the date of the transaction. Acceptance has identified evidence that is both favorable and contrary to the resolution of the disputed factual proposition by the trial court. However, where Acceptance falls short in its argument is: (1) when it refuses to recognize the *reasonable inferences from the evidence favorable to the challenged finding by the trial court*; and (2) when it fails to resolve conflicts in

the evidence in accordance with the trial court's credibility determinations, whether explicit or implicit.

For example, Acceptance concedes that the purchase agreement document that USA Cars prepared and used in the transaction with Bowman Sr. requires that both parties must sign the agreement before the agreement was binding, and USA Cars chose to use that language and required that language in this transaction. While Acceptance argues that Texas law did not *require* such acts to "effect a sale" in the state of Texas, Acceptance ignores that there is nothing in Texas law that *prohibits* parties from adding this requirement to their agreement and, at minimum, the decision of USA Cars to place this language into the agreement is relevant to the ultimate issue that the fact-finder was called upon to decide. Undaunted, Acceptance argues that the trial court should have disregarded the language in the written agreement and accepted as credible the testimony of USA Cars' corporate representative who testified that sometimes USA Cars enforces the signature requirement of the agreement, and sometimes it doesn't, depending on how much of the purchase price is paid at the time the agreement is signed (at least by one of the parties). Aside from the fact that Acceptance offered no evidence that Bowman Sr. was told that the signature requirement of the agreement was unenforceable, this ignores the trial court's implicit credibility determination that the language of the agreement meant precisely what it said, not what a corporate representative said it really meant *after* a lawsuit was filed.

As another example, Acceptance argues in its appellate brief that the real reason title was not presented to Bowman Sr. on March 24, 2005, or within one week as promised, or at least prior to the fatal car wreck five weeks later, is, as the USA Cars representative surmises, "*probably* because the [Vehicle] was never titled in the name of USA Cars, but rather the title still remained in the name of the person from whom USA Cars received the vehicle." From this

*probability*, Acceptance argues that there simply could be no other reasonable explanation for why an automobile dealer would need some two and a half months to convey title. Aside from Acceptance's failure to recognize the reality that this testimony was offered by the USA Cars corporate representative as a *probability* as opposed to an *actuality* of what happened (and one would assume that USA Cars would have possessed the information necessary to testify as to such actuality), this ignores the evidence that Bowman Sr. did not consider the sale of the vehicle complete without the title and Bowman Sr. made repeated requests to USA Cars about the title because he was concerned about the completion of the transaction since USA Cars was not delivering title as promised and many weeks were passing in the interim. This ignores the evidence that Bowman Sr. called USA Cars to express frustration about the continuing lack of title to the Vehicle and to ask permission to drive the vehicle outside the state of Texas with USA Cars' plates, since Bowman Sr. could not register the Vehicle as its *owner* without the title. This ignores the evidence that USA Cars told Bowman Sr., in response, that it was "still working on the title," but "you're covered" under USA Cars' tags. This ignores the evidence that USA Cars did not even release its lien on the Vehicle until May 2005 while it claims it sold the Vehicle for full purchase price in March 2005 and claims the sale was completed at that time. This ignores the evidence that the highway patrol report reflects, at the time of the wreck in April 2005, that USA Cars was the owner of the Vehicle. When these examples of evidence in the record are considered along with the reasonable inferences from the evidence, one reasonable explanation for why title was not delivered to Bowman Sr. until well after the April wreck is that USA Cars did not intend to effect the sale until after it could complete its obligation of conveying clear title to the Vehicle, which did not occur prior to the April wreck.

The trial court, as fact-finder, expressly found that Bowman Sr. and USA Cars did not intend a transfer of ownership of the Vehicle as of the date of the April car wreck. While we agree with Acceptance that there was substantial evidence in the record that would have supported "*a conclusion*" to the contrary, we do not believe that the evidence supported *only* the conclusion argued by Acceptance. Instead, accepting as true the foregoing evidence and inferences from it that are favorable to the judgment, we conclude the trial court's judgment is supported by substantial evidence and is not against the great weight of the evidence.

## Conclusion

The trial court's judgment is affirmed.

Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Karen King Mitchell, Judge, concur.