Todd PEARSON, Appellant,

v.

AVO GENERAL SERVICES, LLC, Respondent.

WD 79925

Missouri Court of Appeals, Western District.

OPINION FILED: May 30, 2017

---

David G. Brown, Columbia, MO, Attorney for Appellant.

H. A. Walther, Columbia, MO, Attorney for Respondent.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Lisa White Hardwick and Cynthia L. Martin, Judges

Mark D. Pfeiffer, Chief Judge

Mr. Todd Pearson ("Pearson") appeals from the Judgment of the Circuit Court of Boone County, Missouri ("trial court"), after a bench trial, in favor of AVO General Services, LLC ("AVO"), on Pearson's petition seeking relief under the Missouri Uniform Fraudulent Transfer Act ("MUF-TA"). We affirm.

### Factual and Procedural History [1]

Kenneth Hough ("Hough"), a disabled American veteran, was the sole

---

1. In the appeal of a bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment.

member of AVO, a Missouri limited liability company. AVO was a service-disabled veteran-owned business with the sole purpose of acquiring federal contracts. In May 2009, AVO was awarded a federal contract, which was only available to disabled American veterans, for a digital television project. Pearson's limited liability company, RP Squared, LLC, leased general office premises to AVO for six months in 2009 while AVO worked on the federal contract, which was completed in the summer of 2009. Additionally, with regard to the 2009 federal contract, Pearson had a separate agreement with AVO whereby AVO agreed to pay Pearson five percent of the net project profits from the 2009 digital television federal contract. Ultimately, Pearson's share of the net project profits was determined to be $40,000.

After the 2009 digital television federal contract was fully performed and AVO had been compensated, Pearson made demand in August 2009 for the net project profit share to which he was entitled.

Also in August 2009, Needham Development Group, LLC, Mike Needham, and Brent Wood asserted claims totaling $525,000 for work performed relating to the 2009 digital television federal contract. In August and September 2009, these entities were paid $400,000, resulting in a remaining claimed balance as of September 2009 of $125,000.[2]

In October 2009, fully aware of the $165,000 in claims that were pending, AVO acquired ownership of real property in Boone County, Missouri, having a fair market value of approximately $240,000 ("the Property"), though the record is unclear where the consideration came from for this acquisition. No evidence was admitted at trial suggesting that AVO incurred debt to acquire the Property, or otherwise used its existing assets to acquire the Property.[3] The purpose of this real property acquisition was so that AVO would be able to obtain performance bonds enabling AVO to compete for larger federal contracts.

However, within approximately six months, it became obvious to Hough and AVO that the real estate purchase and corresponding performance bonds business model would not accomplish the desired purpose and that AVO would only seriously be considered by the federal government for smaller contracts. Accordingly, in May 2010, AVO transferred—for nominal consideration—ownership of the Property to another of Hough's solely owned limited liability companies, Sundance Lake Surfer, LLC ("Sundance"), because Sundance's sole purpose was real estate investment and management. Sundance used the Property as collateral to acquire six other real properties.

Thus, as of May 2010, AVO had remaining assets of approximately $89,000 cash on hand plus accounts receivable relating to additional and continuing federal contracts. In fact, AVO generated federal contract income of approximately $58,000 in 2010 and $116,000 in 2011. And, though the record does not identify the receipts in

---

*Sauvain v. Acceptance Indem. Ins. Co.,* 437 S.W.3d 296, 299 n.2 (Mo. App. W.D. 2014).

**2.** Mr. Needham and Needham Development Group, LLC, have separately filed suit against AVO seeking payment of this $125,000 outstanding obligation. That case is currently pending in the Circuit Court of Boone County, Missouri, Case Number 14BA-CV00595.

**3.** At oral argument, Pearson's counsel stated that it was his assumption that Hough purchased the Property with his personal assets and then, as the sole member of AVO, transferred the Property to AVO as a capital contribution to his solely owned limited liability company.

2012, AVO continued to receive revenue from the federal government in 2012.

In March 2010, Pearson filed suit against Hough and AVO, alleging breach of lease and breach of contract for services rendered by Pearson, seeking payment of the $40,000 he was owed ("original lawsuit"). In the original lawsuit, Pearson alleged that though the five percent net project profit agreement was with AVO, Hough's actions as the sole member of AVO were such that Pearson was entitled to pierce the corporate veil and to obtain a personal judgment against Hough. The trial court in the original lawsuit agreed and, in October 2011, entered judgment against both Hough and AVO, jointly and severally, in the amount of $40,000. Thereafter, Hough filed for personal bankruptcy. The bankruptcy trustee did not seek to make any claim that Hough's personal bankruptcy estate was entitled to any interest in the Property. After distributing the bankruptcy estate—including a $6,000 payment to Pearson—Hough's remaining debts were discharged, leaving AVO as the only party liable to Pearson for the original lawsuit judgment.

In September 2013, Pearson filed the present lawsuit against AVO and others (including Sundance) under MUFTA as a judgment creditor. After a bench trial, judgment was entered in favor of AVO and the other defendants.

Pearson appeals.

## Standard of Review

■ In a bench-tried case, the judgment of the trial court will be affirmed by the appellate court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30,

32 (Mo. banc 1976). "We view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Higgins v. Ferrari*, 474 S.W.3d 630, 635 (Mo. App. W.D. 2015) (internal quotation omitted). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* (internal quotation omitted). "We defer to the trial court's determination of the credibility of the witnesses." *Id.* (internal quotation omitted). However, we independently evaluate the trial court's application of the law. *AAA Uniform & Linen Supply, Inc. v. Barefoot, Inc.*, 17 S.W.3d 627, 629 (Mo. App. W.D. 2000).

■ "A party seeking to have a transaction declared void as fraudulent must prove his case by clear and convincing evidence." *Bueneman v. Zykan*, 52 S.W.3d 49, 54 (Mo. App. E.D. 2001). However, regardless of the burden of proof below, our standard of review on appeal remains the same. *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014).

## Analysis

■ Pearson asserts two points of error. First, he contends that the trial court erred in its ruling relating to AVO's solvency at the relevant time frame relating to the lawsuit. Specifically, he maintains in Point I that: (a) the trial court erroneously applied the law because it considered factors other than AVO's debts and assets; and (b) the weight of the evidence was against the trial court's finding that the disputed transaction did not cause AVO's debts to exceed its assets.[4] Second, he

---

4. In Pearson's reply brief, he states that his

misapplication-of-the-law challenge "is the

contends that the trial court erred when it found that AVO did not have actual intent to defraud. Specifically, he maintains in Point II that: (a) the weight of the evidence was against the trial court's findings that five statutory badges of fraud were present; and (b) the trial court erroneously applied the law because it impermissibly "reverse pierced" AVO in the trial court's analysis of the fraud claim.

## Multifarious Point Relied On

 Before addressing Pearson's claims on appeal, we note that his second point relied on contains multifarious claims of error and, accordingly, violates Rule 84.04. *Wennihan v. Wennihan*, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Id.* (internal quotation omitted). A misapplication-of-the-law challenge and an against-the-weight-of-the-evidence challenge "are distinct claims. They must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie*, 439 S.W.3d at 199 n.11 (citations omitted). However, "[b]ecause we are able to discern the claims being made and the defective nature of the point relied on does not impede our disposition of the case on the merits, we will exercise our discretion to attempt to resolve the issues on the merits." *Wennihan*, 452 S.W.3d at 728 (internal quotation omitted). "We will separate [Pearson's] contentions, as best we can

discern them, and respond to each one individually." *Id.* (internal quotation omitted). Although we will gratuitously address the merits of Pearson's claims, "[a]ppellate counsel should take caution to follow Rule 84.04(d)." *Ivie*, 439 S.W.3d at 199 n.11.

## Point I

Pearson contends that the trial court misapplied the law of insolvency by considering factors other than AVO's debts and assets. Pearson's challenge to the trial court's judgment rests on his contention that under section 428.029.1,[5] AVO's 2010 transfer of assets was fraudulent because AVO became insolvent as a result of the transfer. Section 428.029.1 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The transfer at issue occurred on May 26, 2010, when Hough, on behalf of AVO, executed and filed a general warranty deed, which transferred the Property to Sundance. AVO concedes that Pearson's claim arose before the transfer (though, as the trial court noted, Pearson's claim actually existed *before* the Property was even acquired in the first place by AVO)[6] and that

only argument that Pearson makes and relies upon on Point I." Consequently, we will consider his against-the-weight-of-the-evidence challenge waived and not address it.

5. All statutory references are to the Revised Statutes of Missouri 2016.

6. As the trial court intimated in its judgment, the fact that AVO knew of the Pearson and

Needham claims *before* acquiring the Property in the first place lends credibility to Hough's explanation for the purpose of the initial transfer of the Property to AVO and, shortly thereafter, the transfer to Sundance. For it would not be plausible that AVO would acquire an asset *after* it knew of claims if it intended to defraud creditors by transferring the same asset out of AVO approximately sev-

the transfer was made without receiving a reasonably equivalent exchange. What AVO disputed, however, was whether AVO was insolvent at the time of the transfer or became insolvent as a result of the transfer.

The trial court found that the transfer was not fraudulent under section 428.029 because Pearson failed to prove AVO became insolvent as a result of the transfer. "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." § 428.014.1. Additionally, "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." § 428.014.2. A "debt" is "liability on a claim." § 428.009(5). A "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 428.009(3).

█ Pearson argues that, as a matter of law, AVO was insolvent after the May 26, 2010 transfer because immediately after the transfer, AVO had debts of at least $165,000 (the $40,000 lawsuit filed by Pearson plus a $125,000 claim by Mike Needham and Needham Development Group, LLC) and assets with a fair valuation of only $80,000 to $90,000.

█ In his argument, Pearson posits that the trial court should only have considered AVO's cash on hand after the transfer of the Property to Sundance. What Pearson ignores is that AVO continued to be awarded government contracts and, hence, continued to develop accounts receivable with the federal government in

excess of $169,000. With regard to the valuation of a business, "existing contracts are akin to an account receivable or a contractual obligation owed to the ... company representing the value of work in progress." *Binder v. Thorne-Binder*, 186 S.W.3d 864, 869 (Mo. App. W.D. 2006). The value of these contracts are includable in an itemization of company assets and are eligible to be valued as other company assets. *Id.* In addition, Hough testified that he never considered AVO to be insolvent, and "every individual I had a contract with and an agreement with was paid." Indeed, for years after the conveyance of the Property to Sundance, AVO was a going concern—generating revenues and paying expenses.

In finding that AVO did not become insolvent as a result of the transfer, the trial court considered that "AVO continued to conduct business well after the May 26, 2010 transfer of the Property, AVO had $89,000 in the bank even after the transfer[,] and AVO was depositing large sums of money into a bank account through November 2011."

The trial court properly considered AVO's debts and *all* the company's assets, including AVO's accounts receivable and not merely its bank balances, in addressing AVO's solvency after the conveyance of the Property to Sundance in 2010. Having independently evaluated the trial court's application of the law, *AAA Uniform & Linen Supply, Inc. v. Barefoot, Inc.*, 17 S.W.3d 627, 629 (Mo. App. W.D. 2000), we find that the trial court did not err.

Point I is denied.

en months later. If fraud upon creditors was the intent, it would make no sense to put the asset in AVO in the first place. Hence, while Hough's actions may have been sloppy enough to justify piercing the corporate veil in the original lawsuit filed against Hough

and AVO, we find it no coincidence that the bankruptcy trustee did not seek to assert a claim of fraud and attempt to un-do the Property conveyance to Sundance that Hough orchestrated as the sole member of both AVO and Sundance.

## Point II

In Pearson's second point, he contends that the trial court erred when it found that AVO did not have actual intent to defraud under section 428.024.1(1).

To set aside a transfer as fraudulent under MUFTA, the creditor must show that the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." § 428.024.1(1). "The burden of proof is on the creditor, and fraud is never presumed when the transaction may be fairly reconciled with honesty." *Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. App. W.D. 2015) (internal quotation omitted). The plaintiff bears the burden to prove intent to defraud, and intent must be shown by clear and convincing evidence. *Id.*

Because intent to defraud is often difficult to prove by direct evidence, Missouri courts may look to a number of "badges of fraud" to infer intent to defraud from the factual circumstances. *Id.* In Missouri, the badges of fraud include:

(1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious.

*Id.* In determining actual intent under section 428.024.1, section 428.024.2 provides that consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

"The 'badges of fraud' inquiry is only a tool that the trial court may use to try to reach the underlying relevant inquiry—fraudulent intent." *Higgins*, 474 S.W.3d at 638. "Although the presence of several badges of fraud gives rise to the presumption that the transfer was fraudulent, even the presumption may be rebutted if the transferor can provide evidence that the transfer was not made for the purpose to hinder, delay or defraud creditors." *Id.* "There is nothing in statute or case law that requires that the trial court find fraudulent intent where a certain number of 'badges of fraud' are present. Rather, the trial court may use a 'badges of fraud' inquiry to help it determine whether fraudulent intent was present." *Id.*

### Against-the-Weight-of-the-Evidence Challenge

First, Pearson maintains that the weight of the evidence was against the

trial court's findings that five[7] statutory badges of fraud were present.[8] Our analysis begins by noting that "[t]he trial court's judgment is presumed valid[,] and the burden is on the appellant to demonstrate its incorrectness." *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 303 (Mo. App. W.D. 2014) (internal quotation omitted).

 In bringing an against-the-weight-of-the-evidence challenge, Pearson must:

> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Id.* at 304. "[W]eight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Id.* (internal quotation omitted). An against-the-weight-of-the-evidence challenge "presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Id.* (internal quotation omitted). If resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations. *Id.*

 On appeal, Pearson correctly identified the disputed factual proposition: whether AVO had actual intent to defraud when it transferred the Property to Sundance. He also identified evidence contrary to the resolution of the disputed factual proposition by the trial court. The trial court found that Pearson demonstrated four statutory badges of fraud: that the conveyance of the property was to an insider (§ 428.024.2(1)); that the debtor retained control of the property after the conveyance (§ 428.024.2(2)); the debtor had been sued or threatened with suit (§ 428.024.2(4)); and the value of the consideration received was inadequate (§ 428.024.2(8)).

Pearson identified some of the evidence supporting the trial court's ruling. He

---

7. Pearson makes the assumption that AVO's purported insolvency after the transfer (§ 428.024.2(9)) was a fifth badge of fraud. As we have discussed in our analysis of Point I, substantial evidence supported the trial court's conclusion that, in fact, AVO was *not* insolvent after the disputed transfer.

8. Pearson relies on two pre-MUFTA cases (MUFTA was enacted in 1992), *Cohoon v. Cohoon*, 627 S.W.2d 304, 307 (Mo. App. E.D. 1981), and *Community Federal Savings & Loan Association v. Boyer*, 710 S.W.2d 332, 334 (Mo. App. E.D. 1986), to support his argument that because a concurrence of several badges of fraud raises a presumption of fraud, the trial court should have presumed fraud. Pearson's reliance is misplaced because in neither case was there evidence supporting a justification for the transfer. *Cohoon*, 627 S.W.2d at 308 ("Based upon these indicia of fraud and there being no other countervailing argument supported by evidence legitimizing the transfer, the court erred in determining that this conveyance was not fraudulent."); *Boyer*, 710 S.W.2d at 335 ("[A]ppellants presented no evidence of any legitimate countervailing justification for the transfer...."). Here, the trial court accepted Hough's testimony as to a legitimate business purpose for the transfer of the Property to rebut any presumption of fraud.

identified Hough's testimony as the basis for the trial court's conclusion that Hough, as the sole member-manager of AVO, made a rational business decision on behalf of AVO to de-capitalize AVO and free up the Property to be repurposed as capital for Sundance. Hough testified that his only motivation for originally having AVO acquire the Property was to develop a business plan that would support the acquisition of performance bonds so that he could successfully pursue larger government contracts; but, when that business model proved fruitless, so also did Hough believe, on behalf of AVO, that the Property no longer served any useful purpose for AVO.

However, Pearson does not address *all* the favorable evidence supporting the trial court's ruling. Specifically, the trial court found: that the transfer was not concealed in that the deed from AVO was recorded on May 26, 2010, the same day it was signed (§ 428.024.2(3)); AVO did not abscond (§ 428.024.2(6)); AVO did not become insolvent shortly after the transfer was made (§ 428.024.2(9)); the transfer did not occur around the time that a substantial debt was incurred (§ 428.024.2(10)); and the Property was not transferred to a lienor (§ 428.024.2(11)). Additionally, the trial court found that AVO was put on notice of significant claims against it in August 2009, two months *before* it acquired the Property in October 2009 and seven months before it transferred the Property to Sundance, which indicated to the trial court that the *same* claims from August 2009 that were still pending in May 2010 did not trigger transfer of the Property. Instead, the trial court believed that this additional favorable evidence lent credibility to Hough's testimony as to the legiti-

mate business purposes for the transfer of the Property *to* and *from* AVO in 2009 and 2010.[9]

The trial court's four-page judgment with detailed factual findings reflects that it carefully considered the badges of fraud and ultimately was persuaded by what it believed to be the more credible evidence that the transfer of the Property was not made with fraudulent intent but for a valid business purpose. *Higgins*, 474 S.W.3d at 639. Our standard of review requires that we view the facts in the light most favorable to the trial court's judgment and accept as true evidence and inferences favorable to the trial court's judgment while disregarding contrary evidence. *Id.* The trial court's finding that there was a valid business reason for the transfer of the Property from AVO to Sundance was supported by substantial evidence and was not against the weight of the evidence and, accordingly, its finding on this topic was not error.

### Misapplication-of-the-Law Challenge

 Second, Pearson asserts that the trial court misapplied the law because it impermissibly "reverse pierced" AVO by attributing Hough's personal business purposes to AVO rather than analyze AVO's corporate interests. We disagree.

As we explained in our analysis of the first claim of error in Pearson's multifarious Point II, recognizing that a corporate entity can only act through its agent, the trial court necessarily analyzed the actions of AVO's sole member—Hough—and ultimately concluded that the business model developed by Hough *for* AVO's federal contract business was, in fact, the legitimate business plan and model for AVO,

9. Pearson's briefing also fails to recognize the reasonable inferences from the evidence favorable to the challenged finding by the trial court and fails to resolve conflicts in the evi-

dence in accordance with the trial court's credibility determinations, whether explicit or implicit. *Sauvain*, 437 S.W.3d at 305.

not Hough. Further, once it became apparent that the only purpose for transferring the Property into AVO in the first place was no longer a viable purpose to be utilized by AVO, the trial court concluded that there was nothing illegitimate or fraudulent about AVO removing that asset from AVO's business. In sum, the trial court did *not* fail to consider AVO's business interest in transferring the Property *to* and *from* AVO, and Pearson's suggestion to the contrary simply mischaracterizes the trial court's judgment.

As further evidence of Pearson's misperception of the judgment below, Pearson argues in its briefing that "Hough is not a defendant [in] this case, he is not the party accused of fraud" and, accordingly, "the party whose intent must be analyzed is the debtor that made the allegedly fraudulent transfer—the defendant-debtor AVO."

First, this completely contradicts the argument that Pearson made in his original lawsuit against Hough and AVO. Pearson obtained a joint and several liability judgment against those two entities by successfully proving that "AVO is a sham company" and that Hough should be personally liable for the same "debt" for which Pearson now argues on appeal is actually the "debt" of AVO, not Hough. Pearson attempted to collect the same "debt" in the current lawsuit against AVO that he pursued in Hough's personal bankruptcy. Having failed to collect the entire $40,000 "debt" in Hough's personal bankruptcy, and after Hough's discharge in bankruptcy, Pearson now changes course in his argument to this court and asserts that Hough's "intent" is irrelevant to any discussion of this case. Again, we disagree.

 AVO was a limited liability company. A limited liability company is a hybrid business entity having both corporate and partnership attributes. *Hibbs v. Berger*, 430 S.W.3d 296, 313 (Mo. App.

E.D. 2014). "A limited liability company, like a corporation, is an artificial being, and as an entity it must act through an agent." *Sutherland v. Sutherland*, 348 S.W.3d 84, 92 (Mo. App. W.D. 2011) (internal quotation omitted). An individual holding an ownership interest in a limited liability company is designated as a "member." *Hibbs*, 430 S.W.3d at 314. An individual who may or may not be a member of the LLC but manages the LLC's operations is designated as a "manager." *Id.* Hough was AVO's sole member-manager. As such, he was an agent of the limited liability company for the purpose of its business and affairs. *See* § 347.065.1; § 347.065.2(2).

 "It is a well-established rule of agency that the knowledge of an agent of a corporation with reference to a matter within [his] scope of his authority . . . and to which his authority . . . extends is imputed to the corporation." *Wandersee v. BP Prods. N. Am., Inc.*, 263 S.W.3d 623, 629 (Mo. banc 2008) (internal quotation omitted). "Since a corporation acts by its officers and agents, their purposes, motives, and *intent* are just as much those of the corporation as are the things done." *Id.* at 630 (emphasis added) (internal quotation omitted). Accordingly, the trial court properly considered Hough's intent relating to business decisions on behalf of AVO regarding the transfer of the Property in determining whether AVO had actual intent to defraud under section 428.024.1(1).

Point II is denied.

### Conclusion

The trial court's judgment is affirmed.

Lisa White Hardwick and Cynthia L. Martin, Judges, concur.