

# In the
# Missouri Court of Appeals
# Western District

HILARY O'BRIEN,

        Appellant,

v.

MICHAEL O'BRIEN,

        Respondent.

**WD83197**

**OPINION FILED:**

**OCTOBER 27, 2020**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Bryan Round, Judge**

**Before Division Two: Karen King Mitchell, Presiding Judge, Anthony Rex Gabbert, Judge,
W. Douglas Thomson, Judge**

Hilary O'Brien appeals the judgment of the Jackson County Circuit Court denying her permission to relocate her children from Kansas City to Phoenix, Arizona. She complains in two points on appeal that the trial court's judgment was not supported by substantial evidence and that it was against the weight of the evidence. The judgment is affirmed.

## Facts

Hilary O'Brien[1] ("Mother") and Michael O'Brien ("Father") divorced on May 30, 2018. Pursuant to that judgment, they shared joint physical and joint legal custody of their three

---

[1] At the time of trial, Hilary O'Brien had changed her name to Hilary Leiker.

daughters. The children were 12, 7, and 4 years old. They were in Mother's physical custody except for Thursday overnights, alternating weekends, certain holidays, and two weeks in the summer.

On July 21, 2018, Mother married Jason Leiker. They have a daughter together, born in approximately April 2018. On January 24, 2019, Leiker was declared to be the father of the child born to his relationship with Mother.

On December 5, 2018, Mother submitted a relocation letter to Father stating her intention to move with the children from Kansas City to Phoenix, Arizona. This is a distance of approximately 1200 miles. Father filed a motion to prevent relocation of the children on December 21, 2018.

The matter proceeded to trial on October 4, 2019. At the time of the relocation trial, Mother and Father's daughters were 13, 8, and 5 years old. Leiker and Mother's daughter was 18 months old. Mother's evidence at trial in support of relocation to Phoenix was Leiker had a change of employment, the oldest daughter had educational struggles in Kansas City, and there were better educational opportunities for all daughters in Phoenix. Leiker had been in Arizona, without Mother and the children, since January 2019.

The court found that Mother's request was made in good faith. It further found, however, that Mother failed to meet her burden under section 452.377, RSMo, to show that her proposed relocation is in the best interest of her and Father's minor children. The court did not grant Mother permission to relocate the children.

This appeal follows.

**Standard of Review**

2

"In a court-tried case, we will uphold the trial court's judgment as long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Courtney v. Courtney*, 550 S.W.3d 522, 525–26 (Mo. App. E.D. 2017) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We defer to the trial court's determinations of credibility and view all facts and any inferences drawn therefrom in the light most favorable to the judgment." *Id*.

"A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014) (internal citations omitted). "A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." *Id*. (internal quotation marks omitted). "[A]ny citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Id*. at 803 (internal quotation marks omitted).

**Analysis**

Section 452.377 governs child relocation. Section 452.377.10 provides that "[t]he party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child." The trial court found, and Father does not contest on appeal, that Mother's proposed relocation was made in good faith. Thus, the sole issue on appeal is whether the proposed relocation was in the best interest of the children. The trial court found that it was not; Mother disagrees.

"Sections 452.377 and 452.375 ... are part of a single statutory scheme and must be read together." *Pasternak v. Pasternak*, 467 S.W.3d 264, 269 (Mo. banc 2015) (internal quotation marks omitted). "Although section 452.375.2 does not expressly govern the best interests inquiry in relocation determinations, it is proper for a trial court to consider the factors articulated in section 452.375.2 because those factors are equally relevant to the best interests inquiry in section 452.377." *Id*. at 271. Those factors include:

> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
> (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
> (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
> (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
> (5) The child's adjustment to the child's home, school, and community;
> (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved….
> (7) The intention of either parent to relocate the principal residence of the child; and
> (8) The wishes of a child as to the child's custodian. …

Section 452.375.2.

The trial court made findings with respect to Leiker's employment and the oldest daughter's educational struggles: Mother stayed home with the children and did not work full time. Leiker testified that he was financially responsible for his household which included Mother and her four children. Leiker determined he needed to leave his career in restaurant management because it had unpredictable hours and required him to work evenings. Leiker sought a more traditional job with daytime work hours.

Leiker's current job with Farmers Insurance resulted in reduced present income but offered greater long-term financial opportunity. Farmers was transitioning its workforce out of Kansas

4

City to Arizona. Leiker had been in Phoenix, without Mother and the children, for approximately seven months at the time of trial. He had already received two promotions and was expecting a third promotion by the end of the year. Leiker had video calls with the children daily and came to Kansas City once per month for a week at a time. The court found that no evidence was presented that Leiker could not find a similar position in the Kansas City area or that he attempted to find another position in the Kansas City area other than one interview with the same company.

Mother and Father agree that their oldest daughter has special learning needs related to dyslexia, dyscalculia, and visual process disorder. By agreement of Mother and Father, their oldest daughter attended a charter school for fourth through sixth grade. She was supported by an Individualized Education Plan and a 504 Plan but was not successful at the school. Though she was in sixth grade, the oldest daughter read at a second grade level and performed math at a third grade level. The daughter would lose the one-on-one help she was receiving at the school in the near future. She suffered severe anxiety in her struggle attending the school.

Mother had extensively researched school options in Phoenix. One of the schools she found used an educational approach that would be beneficial to the oldest daughter. It cost $26,000 per year though vouchers, scholarships, and income based discounts would decrease that cost significantly. A similar school was available in Kansas City. It had a similar cost but no opportunities to decrease the price. Father acknowledged that a specialized learning disability school like the two referenced would be an appropriate place for his daughter and her future success. However, he wanted to wait and see how things worked out for his daughter the upcoming school year.

The court made other best interest findings: No evidence was presented that Mother was unable to obtain full time employment. Mother and Father have both made significant efforts to

ensure daily communication between each parent and the children. Since the dissolution of the marriage, Father has consistently exercised his parenting time and has maintained frequent and meaningful contact with the children.

While the oldest daughter has educational needs, no evidence was presented that her current school or another school in the Kansas City area could not provide for her needs. Further, no evidence was presented that the parties could afford the school in Arizona. No evidence was presented that the oldest daughter's educational needs required a relocation to Arizona and no evidence was presented that the educational opportunities for all the children were better in Arizona than in Kansas City. Both Mother and Father have actively participated in the educational process of their three children.

The children have extensive family relationships in the Kansas City area, including Mother's family, Father's family, Leiker's family, and Father himself. The children have long term relationships with their current medical providers and are seen frequently for their needs in the Kansas City area. The children are well adjusted to the Kansas City area in that they have always attended school there, in that they attend and participate in organized activities and lessons in the community, and in that they have developed important friendships and relationships with their peers.

### *Not Supported by Substantial Evidence*

In her first point on appeal, Mother claims the trial court's judgment is not supported by substantial evidence. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Pasternak*, 467 S.W.3d at 268 (internal quotation marks omitted). "To prevail on [a] substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in the record tending to prove a fact that is

6

necessary to sustain the circuit court's judgment as a matter of law." *Id*. (internal quotation marks omitted).

Mother complains extensively in her brief that Father was satisfied with the time awarded to him under the divorce decree and infrequently sought additional time with the children outside what the decree provided. She notes that Father did not take time off work for the children's doctor, therapy, or school appointments. She cared for the children during snow days when school was not in session and when they were sick. Mother states that Father did not take the time to learn about their oldest daughter's issues. Mother recites in her brief all the ways that Leiker is a good step father to the children and spends time helping them and bonding with them. Mother references a letter their oldest daughter wrote to Father wherein the daughter stated how unhappy she was at her current school.

Mother also notes in her brief that she proposed Father would have the children for six to eight weeks in the summer as opposed to two weeks as provided in the divorce decree. She emphasizes the fact that Father's total overnights with the children would increase with her proposed relocation. Mother concludes from this that her proposed relocation would provide Father with frequent, continuing, and meaningful contact with the children.

Mother's argument on appeal focuses on evidence that might arguably support a finding that relocation to Arizona is in the children's best interests. This is contrary to our standard of review. Mother does not dispute the trial court's findings.

Leiker chose to take a lower paying job in order to have better hours. He did not look for a job with a company other than Farmers in the Kansas City area. While daughter was not fully successful in the school she attended the prior three years, no evidence was presented that another school in the Kansas City area could not provide for her needs. No evidence was presented that

7

the oldest daughter's educational needs required a relocation to Arizona and no evidence was presented that the educational opportunities for all the children were better in Arizona than in Kansas City.

Since the dissolution of the marriage, Father has consistently exercised his parenting time and has maintained frequent and meaningful contact with the children. He had physical custody every Thursday overnight, alternating weekends, certain holidays, and two weeks in the summer. The children have extensive family relationships in the Kansas City area, including Mother's family, Father's family, Leiker's family, and Father himself.

The children have long term relationships with their current medical providers and are seen frequently for their needs in the Kansas City area. The children have had the same pediatrician since birth. That pediatrician diagnosed the middle daughter with ADHD, prescribed medication, and monitors her every three months. The youngest daughter has weekly appointments with a speech therapist. The oldest daughter has a dermatologist and therapist she sees.

The children have always attended school in the Kansas City area, attend and participate in organized activities and lessons in the Kansas City area, and have developed important friendships and relationships with their peers in the Kansas City area. The oldest daughter has taken art classes. The middle daughter takes ballet, piano, and swimming lessons. The youngest daughter takes ballet and swimming lessons.

Father loves his children very much. Mother's proposed relocation would mean Father would have the majority of his time with his daughters in the summer as opposed to throughout the year. When asked about his concern regarding only having his daughters on holidays and school breaks, Father testified:

> You know, holidays and vacations are great and they're a valuable part of [life] to help learn to relax and, you know, enjoy life, but that's not a substitute for – who we are as people and who we, you know, are going to become and how we evolve, that happens throughout the daily grind of our everyday life. And so, to not have that ability, to only be the holiday party/vacation time, to me, that's not what parenting really amounts to.

Father wants to be physically present with his children throughout the year. Though the proposed relocation would allot him more total overnights, Father finds more value as a parent in seeing his daughters regularly throughout the year as opposed to seeing them in larger isolated chunks of time.

The trial court found that Mother failed to meet her burden of proving that relocating the children to Arizona was in the children's best interests. This determination was supported by substantial evidence. The point is denied.

### *Against the Weight of the Evidence*

In her second point in appeal, Mother claims the judgment is against the weight of the evidence. "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014). "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Id*. (internal quotation marks omitted). "In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id*. at 206. "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id*. "A circuit court's judgment is against the weight of the evidence only if the circuit court could not

have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id*. "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Id*.

Mother focuses in her brief on two alleged inconsistencies in the judgment. Specifically, she notes the trial court found that: (1) her employment history and employment intentions were limited because of the children and (2) no evidence was presented that Mother was unable to obtain full time employment. We do not find those two findings inconsistent. Mother did not have a history of full time employment and did not intend to find full time employment because she desired to be a stay-at-home mother. That does not mean she was unable to hold a full time job should she so desire.

The second alleged inconsistency involves the trial court finding that Mother and Father have made significant efforts to ensure daily communication between each parent and the children and Father has consistently exercised his parenting time and has maintained frequent and meaningful contact with the children. Mother contrasts these findings with her proposed parenting plan where Father would have more total overnights with the children and her testimony that Father did not take off work to care for the children when needed. Father consistently and fully exercised his parenting time under the dissolution agreement and had frequent and meaningful contact with the children. The frequency and quality of that contact is not diminished because Father did not seek additional time or an additional number of days with the children.

The trial court's judgment was not against the weight of the evidence. The point is denied.

## Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.