In the MATTER OF A.L.R.;

K.R., Respondent,

v.

A.L.S., Appellant.

No. SC 95939

Supreme Court of Missouri,
en banc.

Opinion issued March 14, 2017

The natural mother was represented during arguments by Frank Robert Flaspohler, an attorney in Fayette, (660) 248-1040.

The paternal grandfather was represented by Wendy L. Wooldridge, an attorney in Boonville, (660) 882-3447.

Laura Denvir Stith, Judge

A.L.S. (Mother) appeals the trial court's order issuing letters of guardianship and conservatorship of A.L.R. to certain paternal cousins. Mother argues this Court should hold that due process requires the burden of proof in guardianship proceedings involving a minor is proof by clear and convincing evidence that the parent is unable or unfit to be the child's guardian. She says the petitioner (Grandfather) did not present substantial evidence of her unfitness and the finding that she was unfit was against the weight of the evidence under this standard. In the alternative, Mother argues section 475.030.4 [1] violates her due process rights if interpreted to require proof of unfitness by only a preponderance of the evidence. Finally, Mother argues the trial court erred in overruling her motion to continue the guardianship hearing.

The burden of proof in a guardianship proceeding involving a minor under section 475.030.4 is proof by a preponderance of the evidence, not proof by clear and convincing evidence. Grandfather presented substantial evidence at trial sufficient to meet this standard, and the trial court's judgment was not against the weight of the evidence. This Court does not reach Mother's argument that use of a preponderance standard by the trial court violated her due process rights both because the record is silent as to whether the trial court used a preponderance standard and because Mother failed to raise her due process argument in the trial court and cannot raise it for the first time on appeal. Mother also has failed to show the trial court abused its discretion in denying her motion for continuance. For all of these reasons, the judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

J.R.L.R. is A.L.R.'s father. Grandfather is A.L.R.'s paternal grandfather. In February 2014, while still a minor, Mother moved into Grandfather's home to live with Father. It is unclear whether Mother became pregnant before or after moving in

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

with Father. The two dropped out of high school. A.L.R. was born in November 2014, when Mother was 16 years old. Mother, Father, and A.L.R. continued to live with Grandfather.

In June 2015, Father was murdered by a man who had had a sexual encounter with Mother. Mother testified the encounter was non-consensual, although she declined to press rape charges. The parties dispute whether Father had already asked Mother to move out prior to the murder, but it is undisputed that, two days after the funeral, Grandfather asked Mother to move out with A.L.R.

Mother and A.L.R. moved in with Mother's friend J.K. from the middle of June until the end of July, during which time Mother was able to obtain a part-time job at Casey's General Store. J.K. provided supplies, clothes, babysitting, and food for A.L.R. On July 2, Grandfather filed a petition to establish a guardianship and conservatorship jointly in two paternal cousins, alleging Mother was unable or unfit to assume the duties of guardianship pursuant to section 475.030.4. A hearing was set for July 27 but was continued to August 13 after Mother sought a continuance, arguing she had just obtained counsel and needed more time to prepare for trial.

In the meantime, Mother had an altercation with J.K.'s 17-year-old daughter. J.K. then told Mother to move out.[2] After staying four days with another friend, Mother and A.L.R. moved in with Mother's mother in a nearby city. Mother then sought another continuance, arguing she needed more time to be able to show she was not unable or unfit, especially given the recent tragic death of Father. Grandfather opposed the motion, repeating allegations in his petition that Mother was not providing a stable home and was not able to care for A.L.R.

The parties appeared on the date of the scheduled hearing, August 13, 2015. The court heard arguments on Mother's motion for continuance but denied the motion. Grandfather called six witnesses and submitted photographic exhibits. Mother called herself and one friend. The guardian ad litem—having first met Mother and A.L.R. only at the earlier hearing and Mother not having met with her otherwise—did not take a position on the guardianship petition but asked a few questions of some of the witnesses on cross-examination.

Following the hearing, the court issued a two-page judgment finding Mother "unable and unfit to properly care for the minor child" and ordered the issuance of letters of guardianship and conservatorship to the two cousins as co-guardians. Although the judgment was silent as to whether the court utilized a clear and convincing or a preponderance standard in determining Mother was unfit, Mother filed a motion for a new trial arguing for the first time that a clear and convincing standard applied, which Grandfather had failed to meet. The court overruled the motion after a hearing. Mother appealed, claiming the trial court had utilized the wrong burden of proof and arguing, for the first time, that due process requires proof of unfitness by clear and convincing evidence, and that, if section 475.030.4 requires only proof by a preponderance of the evidence, then it is unconstitutional.

## II. STANDARD OF REVIEW

▬ As in other bench-tried cases, this Court will affirm the judgment unless it incorrectly declares or applies the law, is not supported by substantial evidence, or

---

2. Mother was not present at the move; her possessions were moved to another friend's apartment by Grandfather, Grandfather's girlfriend, and the girlfriend's stepfather.

is against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The interpretation of a statute is a question of law which this Court determines *de novo. Nelson v. Crane*, 187 S.W.3d 868, 869 (Mo. banc 2006). The primary goal in statutory interpretation is to discern the intent of the legislature from the language in the statute. *Id.* at 869-70.

### III. SECTION 475.030.4 REQUIRES PROOF OF INABILITY OR UNFITNESS BY A PREPONDERANCE OF THE EVIDENCE, NOT BY CLEAR AND CONVINCING EVIDENCE

In her first point, Mother argues that section 475.030.4 is silent as to the applicable burden of proof of parental unfitness, giving this Court the authority to determine what standard of proof should apply. Mother argues it makes sense for this Court to apply a clear and convincing evidence standard because that is the standard the United States Supreme Court applies to actions to terminate parental rights and even to terminate social security disability benefits. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (it violated due process to terminate parental rights under a preponderance of the evidence standard); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (termination of social security disability benefits requires clear and convincing evidence).

Mother recognizes that, unlike a termination of parental rights, a guardianship does not result in a permanent deprivation of a parent's rights. She suggests a guardianship proceeding involving a minor can result in what effectively will become permanent placement, however, and so a higher burden of proof should be required, because once a guardianship is established, it shifts the burden to the parent to establish she has become fit, and so at its core is the same level of seriousness as a termination of parental rights. *§ 475.083.2(3), RSMo Supp. 2013.*

This Court does not reach the policy issue raised by Mother because it finds the premise of the argument incorrect on a variety of grounds. First, Mother's argument is based on the assumption that the trial court applied a preponderance standard. While this may well be the case, Mother cites nothing in the record that identifies what standard was used, nor does she identify any point prior to her motion for new trial at which she asked for application of a clear and convincing evidence standard.[3]

Second, while Mother argues this Court is free to adopt a clear and convincing evidence standard because the statute is silent on the question of what burden of proof applies, that is not the case. Missouri law is well-settled: "In the usual civil litigation, the burden of proof is preponderance of the evidence because private interests predominate; therefore, the litigants share the risk of error equally." *In re Van Orden*, 271 S.W.3d 579, 585 (Mo. banc 2008), *citing, Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The same rule applies in statutory proceedings. "When the legislature is silent as to the standard of proof to be applied in a statutorily created cause of action, this is regarded as a signal that the legislature intended for the preponderance of evi-

---

**3.** Mother cites no authority requiring the trial court to specify what standard was used. *Cf. White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010) ("In the absence of a statute or rule requiring written findings of fact, Rule 73.01(c) governs and provides that a trial court is required to make written findings of fact only when requested to do so by a party.").

dence standard to apply." *Martinez v. State*, 24 S.W.3d 10, 20 n.10 (Mo. App. 2000). By remaining silent in section 475.030 as to what burden of proof applies, the legislature signaled that a preponderance of the evidence standard applies.

■ Finally, the legislature has not hesitated to identify a different standard of proof in guardianship proceedings in other circumstances. Section 475.075.7 explicitly specifies that a clear and convincing evidence standard applies in guardianship proceedings involving incapacity, partial incapacity, or disability, stating: "The petitioner has the burden of proving incapacity, partial incapacity, disability, or partial disability *by clear and convincing evidence.*" (Emphasis added). The fact that the legislature provided for a clear and convincing evidence standard in cases involving guardianships of those with disabilities but did not so provide in the case of guardianships of minors is telling. " '[T]he doctrine of *in pari materia* recognizes that statutes relating to the same subject matter should be read together....' " *State ex rel. Taylor v. Russell*, 449 S.W.3d 380, 382 (Mo. banc 2014), *quoting, Turner v. Sch. Dist. of Clayton,* 318 S.W.3d 660, 668 (Mo. banc 2010).

As stated in *In re Estate of L.G.T.*, 442 S.W.3d 96, 108 n.11 (Mo. App. 2014), in rejecting a similar call to apply a clear and convincing standard, "[b]ecause guardianship for reason of minority is not included in the list of grounds set forth in section 475.075.7 that are subject to the heightened standard of proof of clear and convincing evidence, we presume that the usual standard of proof in civil cases—preponderance of the evidence—is the applicable standard." The trial court did not err if it applied a preponderance of the evidence standard in this guardianship proceeding.

■ For the first time at oral argument Mother alternatively argues that if section 475.030 requires only proof by a preponderance of the evidence, it is unconstitutional because a natural parent's interest in acting as the child's guardian is a fundamental liberty interest that must be protected by a higher burden of proof. Any argument as to the impropriety of the burden of proof applicable to a petition to end the guardianship of A.L.R. is premature, however, as Mother has not shown that she would meet the standards for reobtaining guardianship under any burden of proof. Equally important, Mother failed to preserve her constitutional claims by failing to raise her due process arguments until her motion for new trial and by failing to argue that the statute is unconstitutional until argument in this Court. Constitutional challenges not raised at the first opportunity are waived. *Mayes v. Saint Luke's Hosp. of Kansas City,* 430 S.W.3d 260, 267-69, 269 n.14 (Mo. banc 2014). Because the constitutional claim was not timely raised, this Court declines to address it.

## IV. THE JUDGMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS NOT AGAINST THE WEIGHT OF THE EVIDENCE

■ Mother also argues the judgment that she was unfit is not supported by substantial evidence and is against the weight of the evidence. In reviewing whether a judgment is supported by substantial evidence, this Court views the evidence in the light most favorable to the judgment, accepting as true evidence and inferences favorable to the judgment and disregarding all contrary evidence. *Pasternak v. Pasternak,*467 S.W.3d 264, 268 (Mo. banc 2015). The record shows the trial court's finding that Mother is unable or unfit to act as A.L.R.'s guardian is sup-

ported by substantial evidence, including evidence that: Mother was unwilling or unable to feed A.L.R. on a regular schedule; family members and friends had to provide food, supplies, and child care to be sure A.L.R. was cared for; Mother would feed A.L.R. by leaving a bottle propped up to A.L.R.'s mouth and then leave A.L.R. unattended; Mother was unable to provide a permanent home; Mother did not bathe A.L.R. regularly and on one occasion neglected to bathe A.L.R. for a period of four days; Mother slept with headphones and therefore could not hear A.L.R. if A.L.R. woke up; and many other specific instances of improper parenting.[4] Much of this evidence was uncontested by Mother or her witness, and indeed some of it came from Mother's own testimony. Substantial evidence supported the court's judgment.

 Against-the-weight-of-the-evidence review is very deferential. A judgment is only reversed "in rare cases, when [the reviewing court] has a firm belief that the decree or judgment is wrong." *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014). A challenge to the weight of the evidence presupposes that substantial evidence exists to support the judgment. *Id.* at 205. However, this type of evidentiary challenge "is not an opportunity for an appellant to receive a new factual determination from a different court." *Estate of L.G.T.*, 442 S.W.3d at 116. A judgment is against the weight of the evidence "only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Ivie*, 439 S.W.3d at 206. Even "[w]hen the evidence poses two reasonable but different conclusions, appellate

courts must defer to the circuit court's assessment of that evidence." *Id.*

In arguing that the judgment was against the weight of the evidence, Mother points to evidence showing that she was not using drugs and was trying to obtain her GED, independent housing, employment, and a car. While the trial court was free to weigh this evidence and to consider her arguments that Grandfather's witnesses were all biased relatives, it was up to the trial court to determine the weight to give this evidence. Mother's evidence is not sufficient for this Court to determine that the trial court could not have reasonably found the facts necessary to support its judgment from the trial record. Furthermore, this Court does not have a "firm belief that the decree or judgment is wrong" based on this evidence. Indeed, most of Grandfather's evidence was not contested by Mother, and the weight of the evidence supported the trial court's judgment.

## V. OVERRULING THE MOTION TO CONTINUE WAS NOT AN ABUSE OF DISCRETION

 Overruling a motion for continuance is within the sound discretion of the trial court. *State v. Chambers*, 481 S.W.3d 1, 8 (Mo. banc 2016). "The party requesting the continuance must make a strong showing of abuse as well as prejudice resulting from the denial of the request." *Id.*

 In her second motion for continuance, Mother argues that she was not given sufficient time with A.L.R. to show whether she had the ability and fitness to serve as guardian, especially in the light of the recent death of Father. She notes the petition was filed only 42 days prior to the

---

4. This included, for example, evidence that: Mother left a dirty bottle and empty plastic diaper container in A.L.R.'s crib and a dirty diaper on the windowsill; Mother left an elec-tric hairdryer in the bathroom sink; and Mother allowed A.L.R. to be transported in a car seat facing forward in the front seat of a truck with the car seat not secured.

hearing, and Mother was served only 23 days prior to the date of hearing.[5] Mother does not suggest, however, that but for the timing of the trial she would have been able to call additional witnesses to refute the petitioner's evidence and support a claim that she was then fit. Mother also does not explain what she could or would have done had she been given additional time, nor does she explain how she would have shown her ability to parent in a better light had she been given additional time.

To the extent Mother is arguing that she will be able to parent more appropriately in the future once she has recovered from the shock of Father's murder, such a showing certainly would be relevant to any later attempt by her to end the guardianship. But the hearing before the trial court concerned who would care for A.L.R. right then, not at some future point. The trial court could appropriately consider that the safety of A.L.R. required it to act expeditiously to move A.L.R. to the care of an appropriate guardian if Mother was currently unfit. Mother has not shown that overruling her second motion for continuance was an abuse of discretion.

## VI. CONCLUSION

The trial court judgment ordering the issuance of letters of guardianship and conservatorship is affirmed.

Breckenridge, C.J., Fischer, Draper, Wilson and Russell, JJ., concur.

5. Mother also raises the point that the GAL had not yet been able to meet with her or A.L.R. before the hearing. Grandfather points out that both Mother and the GAL were in court on July 27 when Mother's first motion for continuance was granted and the trial was reset for August 13, and, therefore, Mother knew of the need to meet with the GAL. The evidence suggests that the GAL had attempted to meet, but Mother had not made herself available prior to the August 13 hearing.