v.

**Kelly Luther WIDEMAN, Appellant.**

**WD 80286**

Missouri Court of Appeals,
Western District.

OPINION FILED: July 5, 2017

C.D.R., Jefferson City, MO, Respondent, pro se.

Joshua L. Hill, Jefferson City, MO, Attorney for Appellant.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Lisa White Hardwick and Edward R. Ardini, Jr., Judges

Mark D. Pfeiffer, Chief Judge

Mr. Kelly Wideman appeals from the "Judgment of the Full Order of Protection—Adult" entered in favor of C.R.[1] by the Circuit Court of Cole County, Missouri ("trial court"). We affirm.

## Factual and Procedural Background[2]

C.R. and Mr. Wideman were previously in a romantic or intimate relationship and

---

1. Pursuant to section 595.226, RSMo 2016, we refer to the individual claiming to have been the victim of abuse by her initials.

2. "[W]e review the evidence in a light most favorable to the judgment, accept the evidence favorable to the judgment as true, and disregard any contradictory evidence." *Sauvain v. Acceptance Indem. Ins. Co.,* 437 S.W.3d 296, 303 (Mo. App. W.D. 2014).

had resided together. The relationship was tumultuous, including what C.R. described as physically and verbally abusive conduct by Mr. Wideman toward her, eventually leading to C.R.'s decision to end the relationship in 2015.

Thereafter, C.R. felt physically threatened, harassed, and stalked by Mr. Wideman's conduct. Thus, she filed a petition seeking an order of protection against Mr. Wideman. On February 24, 2016, the trial court issued an ex parte order of protection. The trial court conducted an evidentiary hearing on March 3, 2016, where the parties appeared *pro se* and testified. The trial court entered a judgment on March 3, 2016, in which a full order of protection, effective until March 3, 2017, was issued in favor of C.R. against Mr. Wideman.

Mr. Wideman hired counsel, who promptly filed a motion seeking to set aside the judgment; reopen the evidence to take additional evidence that Mr. Wideman wished to present; and reconsider the entry of the full order of protection. The circuit court granted the requested relief, conducting another evidentiary hearing on April 25, 2016, and setting aside the March 3, 2016 full order of protection. The trial court took the petition for full order of protection under advisement. The trial court also ordered that the ex parte order remain in effect pending the court's final ruling on the full order. Thereafter, the trial court issued its judgment on December 1, 2016, granting a full order of protection in favor of C.R. and against Mr. Wideman. The terms of the judgment expressly noted that the full order of protection would expire on May 1, 2017.

Mr. Wideman appealed, arguing that the judgment was against the weight of the evidence and in excess of the trial court's statutory authority.

## Mootness Doctrine

■ We first note that the trial court's judgment specifically denotes that the full order of protection will expire on May 1, 2017. Hence, the full order of protection in question expired during the pendency of Mr. Wideman's appeal and prior to its submission to this Court on appeal.

■ "Generally, an appellate court does not decide moot issues." *C.I.A. v. T.E.*, 423 S.W.3d 844, 845 (Mo. App. W.D. 2014). "Whether a case is moot is a legal question that the appellate court raises *sua sponte* on appeal." *Id.* "When a full order of protection has expired, any appeal of that order is moot, because there is no practical effect in vacating an order that has expired." *Hail v. Hail*, 380 S.W.3d 655, 656 (Mo. App. W.D. 2012) (internal quotation omitted).

However, an appellate court "may consider the appeal if it raises a recurring issue of general public interest and importance and would otherwise evade appellate review." *Id.* (internal quotation omitted). And, in the context of an appeal from a full order of protection, this exception to the mootness doctrine is addressed by section 455.007, RSMo 2016:

> Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired.

As there is no other provision of law to the contrary, we "shall" apply the public interest exception to the mootness doctrine to the trial court's judgment granting a full order of protection, and we will evaluate the substantive merit of Mr. Wideman's appeal.[3]

---

**3.** In *C.I.A. v. T.E.*, 423 S.W.3d 844 (Mo. App. W.D. 2014), we were applying an earlier version of section 455.007 that included preconditions to the applicability of the public

### Standard of Review

■ "On appeal of a bench-tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 302 (Mo. App. W.D. 2014). A challenge to the weight of the evidence "presupposes that there is sufficient evidence to support the judgment," but examines the probative value of that evidence to induce belief. *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014). "In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.* at 206. "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the [trial] court's assessment of that evidence." *Id.* We will overturn a trial court's judgment only in rare cases where we have a firm belief that the judgment is wrong, and only when the trial court "could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id. See also Sauvain*, 437 S.W.3d at 302.

■ In reviewing the record in an against-the-weight-of-the-evidence challenge, we defer to the trial court's factual findings "when the factual issues are contested and when the facts as found by the [trial] court depend on credibility determinations." *Ivie*, 439 S.W.3d at 206. We defer to the trial court's credibility determinations "because the [trial] court is in a better position to weigh the contested and conflicting evidence in the context of the whole case," including weighing the de-

meanor, sincerity, and character of witnesses. *Id.* "Accordingly, we review the evidence in a light most favorable to the judgment, accept the evidence favorable to the judgment as true, and disregard any contradictory evidence." *Sauvain*, 437 S.W.3d at 303. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

■ "When reviewing the record below, we are cognizant of, and defer to, the trial court's superior ability to evaluate the issues by the testimony and demeanor of the witnesses." *McAlister v. Strohmeyer*, 395 S.W.3d 546, 550 (Mo. App. W.D. 2013) (internal quotation omitted). "Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Wallace v. Van Pelt*, 969 S.W.2d 380, 383 (Mo. App. W.D. 1998).

### Analysis
#### I.

In his first point on appeal, Mr. Wideman contends that the trial court erred in issuing a full order of protection against him because the trial court's judgment was against the weight of the evidence. Mr. Wideman argues that the evidence presented did not support C.R.'s allegations that he caused or attempted to cause her physical harm, placed or attempted to place her in apprehension of imminent physical harm, stalked her, harassed her, or unlawfully imprisoned her.

■ In bringing an against-the-weight-of-the-evidence challenge, Mr. Wideman must:

interest exception to the mootness doctrine. In the current version of section 455.007, the legislature removed the pre-condition lan-

guage; hence, the mootness doctrine analysis of *C.I.A.* is inapposite to the present appeal.

(1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Sauvain*, 437 S.W.3d at 304.

## A. Relevant Definitions

Under Missouri's Adult Abuse Act, any person who has been subjected to domestic violence by a present or former household member may request relief in the form of a full protective order by filing a verified petition alleging such domestic violence by the respondent. § 455.020.1.[4] The petitioner must prove the allegations of domestic violence by a preponderance of the evidence in order to obtain a full order of protection. § 455.040.1. Full orders of protection "shall be valid for at least one hundred eighty days and not more than one year." *Id.*

As it relates to the Act, the term **"household member"** includes "persons who are presently residing together or have resided together in the past, [and] any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." § 455.010(7).

The Act defines **"domestic violence"** as "abuse or stalking committed by a family or household member." § 455.010(5). **"Abuse"** is defined as the occurrence of any "acts, attempts or threats against a

person who may be protected pursuant to this chapter," including assault, battery, harassment, and unlawful imprisonment. § 455.010(1). **"Assault"** is defined as "purposefully or knowingly placing or attempting to place another in fear of physical harm." § 455.010(1)(a). **"Battery"** is defined as "purposely or knowingly causing physical harm to another with or without a deadly weapon." § 455.010(1)(b). **"Harassment"** is defined as "engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult ... and serves no legitimate purpose." § 455.010(1)(d). To be "harassment," the course of conduct in question "must be such as would cause a reasonable adult ... to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner." *Id.* The Act defines **"unlawful imprisonment"** as "holding, confining, detaining or abducting another person against that person's will." § 455.010(1)(f). **"Stalking"** is defined as "engag[ing] in an unwanted course of conduct that causes alarm to another person." § 455.010(14).

## B. Evidence to Support Full Order of Protection Based on Abuse Allegations

 Because Mr. Wideman and C.R. had previously been in a romantic relationship and lived together, they clearly fall under the definition of "present or former household members" set forth in section 455.010(7). Here, C.R.'s petition for a protective order alleged that Mr. Wideman had abused her via: (1) battery/attempted battery (*i.e.*, he caused or attempted to cause her physical harm); (2) assault/attempted assault (*i.e.*, he placed or attempt-

---

4. All statutory citations refer to the Revised Statutes of Missouri Supp. 2015, unless otherwise indicated.

ed to place her in apprehension of imminent physical harm); (3) harassment; (4) unlawful imprisonment; and (5) stalking.

At the April 25, 2016 hearing, both C.R. and Mr. Wideman testified as to the nature of their relationship and interactions. C.R. testified as to the following incidents supporting her allegations against Mr. Wideman:

(1) C.R. said she felt threatened and felt "like [Mr. Wideman would] retaliate against [her]" because of "his background, his history, and some of the things he'[d] said to [her]."

(2) Mr. Wideman repeatedly texted C.R.'s family members and new fiancé "calling [C.R.] crazy and ... wrong," which caused C.R. to feel harassed when they told her about the messages. Mr. Wideman sent text messages to C.R.'s new fiancé telling him that C.R. was "two-timing" in an attempt to "inflict anxiousness and trouble" on their relationship.

(3) Mr. Wideman called C.R. and repeatedly sent emails to both her personal and work email addresses, saying she was "nuts" and accusing her of being "two-timing," even after C.R. asked him to stop. She said this caused her to feel anxious and said, "I don't feel like I need to be threatened by [Mr. Wideman] at my place of employment or at my home." C.R. said that she had deleted all of the threatening emails and blocked him from her personal email.

(4) Mr. Wideman held C.R. against her will on a pontoon boat while the couple was attending a river party with mutual friends. Then, when the couple eventually got back to C.R.'s car, Mr. Wideman stood in the door, grabbed her, and would not let her exit the boat.

(5) Mr. Wideman had choked C.R. and bit her face during a previous disagreement.

(6) Mr. Wideman had called C.R. and said, "If I see anyone's car in front of your house, I don't know what I would do." C.R. said this made her feel threatened because she "[knew] his temper and [she knew] his background."

On appeal, Mr. Wideman identifies several disputed factual propositions: whether he did or did not commit a series of threatening acts and abusive acts toward C.R., and whether he did or did not send C.R. a series of emails and texts for the purpose of abusing or stalking her. Mr. Wideman has identified evidence that is both favorable and contrary to the resolution of these factual propositions by the trial court—namely, his contrasting testimony asserting that he made no threatening actions or communications to C.R., and a selection of emails supporting the same assertion. However, Mr. Wideman falls short in his argument when he refuses to recognize the reasonable inferences from the evidence favorable to a judgment in C.R.'s favor, and when he fails to resolve conflicts in the evidence in accordance with the trial court's credibility determinations, whether explicit or implicit. *See Sauvain*, 437 S.W.3d at 304-05.

In almost every instance of alleged threatening behavior committed by Mr. Wideman, C.R. testified that Mr. Wideman *did* commit a threatening act or communication, and Mr. Wideman testified that he *did not* commit a threatening act or communication. In such a situation, the only way in which the trial court could make a resolution of the contested facts was to make a credibility determination between the two parties' testimony, and "we defer to the [circuit] court's superior ability to evaluate the potential for abuse by the testimony and demeanor of witnesses." *A.S. v. Decker*, 318 S.W.3d 751,

756 (Mo. App. W.D. 2010) (internal quotation omitted).

■ The only evidence presented that was not solely testimonial was certain emails offered into evidence by Mr. Wideman. These emails detailed several relatively innocuous conversations between C.R. and Mr. Wideman in early 2016, and Mr. Wideman argues that they definitively prove that he never sent any threatening or harassing emails to C.R. at any time after their breakup. However, Mr. Wideman's argument ignores C.R.'s testimony that the proffered emails were only one small portion of the total emails sent by Mr. Wideman, and that she had deleted most of his emails because they distressed her. One reasonable inference from this evidence and testimony is that Mr. Wideman did, in fact, send an exorbitant volume of threatening or harassing emails to C.R., but C.R. actually had deleted them; and Mr. Wideman only conveniently produced or offered into evidence the emails that portrayed him in a positive light. While the trial court was free to weigh the emails and to consider Mr. Wideman's arguments that C.R. was lying about or misinterpreting their post-breakup interactions, "it was up to the trial court to determine the weight to give this evidence." *See K.R. v. A.L.S. (In re A.L.R.)*, 511 S.W.3d 408, 414 (Mo. banc 2017).

Mr. Wideman's evidence is not sufficient for us to determine that the trial court "could not reasonably have found" the facts necessary to support its judgment. Furthermore, the record does not leave us with a firm belief that the judgment was wrong, especially given that the bulk of the evidence consisted of oppositional testimony portraying the same events in whichever way was most beneficial to the respective witness. The trial court, as fact-finder, implicitly found that C.R. was the more credible party and believed her allegations of abuse against Mr. Wideman. While the evidence and testimony presented could have supported *a* conclusion that Mr. Wideman did not behave in a threatening or abusive manner toward C.R., we do not believe that the evidence supported *only* the conclusion argued by Mr. Wideman on appeal. "Instead, accepting as true the foregoing evidence and inferences from it that are favorable to the judgment, we conclude the trial court's judgment ... is not against the great weight of the evidence." *Sauvain*, 437 S.W.3d at 306.

Point I is denied.

## II.

■ In his second point on appeal, Mr. Wideman argues that the trial court's judgment exceeded its authority by subjecting him to a full order of protection in favor of C.R. that was in excess of one year. We disagree.

In pertinent part, section 455.040.1 states:

[I]f the petitioner has proved the allegation of domestic violence ... by a preponderance of the evidence, and the respondent cannot show that his or her actions alleged to constitute abuse were otherwise justified under the law, the court shall issue a full order of protection for a period of time the court deems appropriate, except that the protective order shall be valid for at least one hundred eighty days and not more than one year.

Here, the trial court's judgment issued a full order of protection for the minimum amount of time prescribed by section 455.040.1—one hundred eighty days. By Mr. Wideman's own admission, the *judgment*, standing alone, is *not* erroneous. Instead, Mr. Wideman's real complaint, which he makes for the first time on appeal, relates to the interlocutory order the

trial court issued on April 25, 2016, the date of the (second) hearing, to-wit:

> Full Order of Protection Set Aside. Hearing Held. Evidence adduced. Petition for Full Order of Adult Protection taken under advisement. Ex Parte Order to remain in effect pending final ruling on Full Order of Protection.

Mr. Wideman points out that the ex parte order of indefinite duration resulted in an interlocutory full order of protection pending the trial court's final ruling of more than seven months. Mr. Wideman argues that the result of the interlocutory order combined with the judgment's issuance of a six-month full order of protection was the trial court's issuance of a full order of protection with a duration in excess of one year. Mr. Wideman's argument fails for a number of reasons.

First, because Mr. Wideman raises this argument for the first time on appeal, the argument is waived. *Coffer v. Wasson–Hunt*, 281 S.W.3d 308, 311 n.1 (Mo. banc 2009).

Second, while we are unaware of any statutory authority for the trial court to have issued an interlocutory ex parte order of indefinite duration [5] (and we sympathize with Mr. Wideman's complaint about the trial court's interlocutory order of indefinite duration and the significant delay associated with the trial court's review of the full order of protection), the trial court's *interlocutory order* is not properly before this Court, and we are without authority to consider that interlocutory ruling in this appeal; instead, it is the trial court's *final judgment* that we are statutorily authorized to review. And, since Mr. Wideman submits no error on appeal regarding the substance of the *final judgment*, his appeal fails.

Point II is denied.

## Conclusion

Based upon the foregoing reasons, the trial court's judgment is affirmed.

Lisa White Hardwick and Edward R. Ardini, Jr., Judges, concur.

---

5. For example, though section 455.035.1, RSMo Cum. Supp. 2013, authorizes the trial court to issue an ex parte order of protection "[u]pon the filing of a verified petition pursuant to sections 455.010 to 455.085 and for good cause shown in the petition ... and [said ex parte order] shall remain in effect until there is valid service of process and a hearing is held," section 455.040.1 mandates that the hearing contemplated by section 455.035.1 take place "[n]ot later than fifteen days after the filing of a petition that meets the requirements of section 455.020." We are unaware of any statute authorizing an interlocutory ex parte order of protection *after* a section 455.040.1 hearing and, at that, of *indefinite* duration. That said, since the issue is not properly before us in this appeal, we offer no opinion as to the lawfulness of the April 25, 2016 interlocutory ex parte order of protection.