

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **S.M.,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **v.** | ) | **WD86929** |
| | ) | |
| **CURTIS DEIERLING,** | ) | **Filed: June 17, 2025** |
| | ) | |
| **Appellant.** | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ADAIR COUNTY
### THE HONORABLE THOMAS P. REDINGTON, JUDGE

### BEFORE DIVISION ONE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK, JUDGE, AND EDWARD R. ARDINI, JR., JUDGE

Curtis Deierling appeals the judgment entering a Full Order of Protection against him and in favor of his former landlord, S.M. Deierling argues the circuit court erred in granting the order of protection because the evidence was insufficient to prove that his actions constituted stalking under the Adult Abuse Act. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2023, S.M. filed a Petition for Order of Protection against her former tenant, Deierling, in Adair County. The circuit court entered a an *Ex Parte* (Temporary) Order of Protection based on the petition's allegations that Deierling had stalked, harassed, followed, and attempted to place S.M. in apprehension of immediate physical harm. On January 16, 2024, the court held a hearing on the Full Order of Protection, during which S.M. and Deierling testified. The following evidence was adduced at the hearing.[1]

In 2023, Deierling was a tenant in an apartment building owned by S.M. through her company, TruColor Properties LLC, in Kirksville. On June 11, 2023, Deierling gave S.M. a one-month notice that he was vacating his apartment. On June 14, 2023, S.M. posted a notice on Deierling's front door giving him until July 10 to move out of the apartment. S.M. also posted a notice requesting Deierling to refrain from being loud and allowing trash to accumulate in the hallway outside the apartment, and to place all trash in the building's dumpster. Deierling responded by placing a sign above the notices on his front door, stating: "24 Hour Written Notice Before contact with us. Castle Law Doctrine enforced beyond this door. No Harassment, Intimidation or threatening manner will be tolerated GO AWAY."

Deierling did not vacate his apartment by July 10 and did not pay his rent. Around July 12, Deierling removed an air conditioning unit and security cameras from the

---

[1] "We view the facts and reasonable inferences in the light most favorable to the judgment." *L.L.M. v. J.L.G.*, 619 S.W.3d 593, 596 (Mo. App. 2021).

building.  S.M. reported the theft, and Deierling surrendered the items after he was confronted by the police.

On July 19, S.M. was cleaning at the building when Deierling yelled through his apartment door, "It better not be that n*****."  Deierling then threatened to shoot if S.M. approached his door.   S.M. called the police later that day because Deierling was openly carrying his guns around the building and had blocked an alley with his car.  S.M. feared that Deierling would cause her physical harm because there were several other occasions when he came out of his apartment and paced back and forth in front of the building with his rifle.

On July 25, S.M. sent Deierling an email requesting that he immediately pay the rent or risk jeopardizing his ability to receive "HUD funding" in the future.  Deierling responded with an email labeled "nigggger paperwork Curtis d," in which he agreed to vacate the apartment by August 10 if S.M. would verify his rent payment to HUD.  S.M. forwarded the email to HUD to report Deierling's use of racially harassing language toward her.

Due to her fears of violence from Deierling, S.M. filed a personalized safety plan with a Kirksville medical facility, A.T. Still University (ATSU), to better protect herself and identify potential escorts when leaving her home or business.  In August 2023, S.M. saw Deierling following her as she was traveling to ATSU and on occasions when she went to the Truman State campus.  Deierling posted fliers at ATSU and Truman, as well as online commentary, to disparage S.M. and her business. ATSU obtained a no-trespass order to prevent Deierling from entering the premises.

Even after Deierling vacated the apartment and moved to a town 40 miles away from Kirksville, he continued to seek out S.M. by driving by her downtown business office. On August 30, 2023, Deierling drove by several times before getting out of his car, walking around outside S.M.'s business, and taking photographs. The following day, S.M. had cameras installed for protection. The cameras revealed other occasions when Deierling was outside her business in September 2023.

At the conclusion of the hearing, the circuit court granted the Full Order of Protection against Deierling on January 11, 2024. Deierling appeals the order of protection, which expired on January 10, 2025.

## STANDARD OF REVIEW

We will affirm a judgment entering a full order of protection unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *L.M.M. v. J.L.G.*, 619 S.W.3d 593, 596 (Mo. App. 2021). Substantial evidence is "competent evidence from which the trier of fact could reasonably decide the case." *H.R. v. Foley*, 356 S.W.3d 210, 213 (Mo. App. 2011). We view "the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Bateman v. Platte Cty.*, 363 S.W.3d 39, 43 (Mo. banc 2012).

The court must ensure enough credible evidence exists to support all elements of the statute before entering an order of protection "because of the potential stigma that may attach to an individual who is labeled a 'stalker.'" *K.L.M. v. B.A.G.*, 532 S.W.3d 706, 709 (Mo. App. 2017). The "petitioner must prove allegations in a petition for an

4

order of protection by a preponderance of the evidence." *L.A.C. v. R.A.P.*, 671 S.W.3d 419, 423 (Mo. App. 2023).

## ANALYSIS

In his sole point on appeal, Deierling contends the circuit court erred in entering a full order of protection because there was insufficient evidence that his actions towards S.M. constituted stalking as required under the Adult Abuse Act.

Given the expiration of the order on January 10, 2025, which was before this case was submitted for our consideration, we must first determine whether the mootness of the judgment prevents our review of the appeal. *C.I.A. v. T.E.*, 423 S.W.3d 844, 845 (Mo. App. 2014). ("Whether a case is moot is a legal question that the appellate court raises *sua sponte* on appeal.") "Generally, an appellate court does not decide moot issues." *Id.* This court may consider an appeal, however, "if it raises a recurring issue of general public interest and importance and would otherwise evade appellate review." *C.D.R. v. Wideman*, 520 S.W.3d 839, 842 (Mo. App. 2017). We have authority to review this case because Section 455.007[2] provides that "the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired." *Id.*

An adult protection order must be supported by (1) a course of conduct, (2) which causes the petitioner to feel subjective fear of physical harm, and (3) a reasonable person in the situation would likewise fear the danger of physical harm. *S.A.B. v. J.L.R.*, 675 S.W.3d 245, 253 (Mo. App. 2023). The Adult Abuse Act allows any adult who has been

---

[2] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2024 Cumulative Supplement.

5

the victim of stalking to seek relief by filing a verified petition alleging such stalking by the respondent. § 455.020.1. After a hearing, the circuit court shall issue a full order of protection if the petitioner has proved the allegation of stalking by a preponderance of the evidence. § 455.040.1.

Under the Adult Abuse Act, stalking occurs "when any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person . . . when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(15). A "course of conduct" involves "two or more acts that serve no legitimate purpose including, but not limited to, acts in which the stalker directly, indirectly, or through a third party follows, monitors, observes, surveils, threatens, or communicates to a person by any action, method, or device." § 455.010(15)(b). Conduct causes alarm when it puts the petitioner in "fear of danger of physical harm[.]" § 455.010(15)(a).

We look at the entire course of conduct, and not each individual act in isolation, to determine if the petitioner was reasonably alarmed. *B.L.M. v. D.L.O.*, 643 S.W.3d 910, 916 (Mo. App. 2022). Conduct may be objectively alarming if it would be reasonable to conclude that such conduct could have escalated further to physical harm. *Id*. When the circuit court does not articulate an explicit finding to each action of a party, we will presume the court made findings in accordance with its decision as to whether a party's activity had a legitimate purpose. *S.A.B. v. J.L.R.*, 675 S.W.3d 245, 253 (Mo. App. 2023).

6

Here, the circuit court entered the Full Order of Protection based on a finding that "Petitioner has proven the allegation of domestic violence, stalking, and/or sexual assault, and Respondent cannot show that his or her actions alleged to constitute abuse were otherwise justified under the law." This finding was supported by S.M.'s testimony that Deierling engaged in repeated conduct from June through September 2023 that threatened her safety and caused her to feel danger of physical harm. When S.M. posted notices on Deierling's door regarding his tenancy in June 2023, Deierling responded with warnings that he would use deadly force (pursuant to the "Castle Law Doctrine"[3]) if S.M. attempted to enter his apartment. In July 2023, Deierling yelled a racial slur through his door and verbally threatened to shoot S.M. when she was cleaning the hallway. Later that same day, S.M. called the police to report that Deierling was openly carrying his guns around the building and had blocked an alley with his car. S.M. testified to other occasions when she felt endangered because Deierling came out of his apartment and paced back and forth in front of the building with his rifle.

Deierling continued to stalk and harass S.M. even after he moved out of the apartment in August 2023. He sent her an email with racial profanity. He followed S.M. in his vehicle when she went to the ATSU medical facility and to the Truman State

---

[3] Under Missouri law, the "castle doctrine permits a person to use deadly force to defend against what he or she reasonably believes to be the use or imminent use of unlawful force by another who unlawfully enters or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person." *State v. Cummings*, 686 S.W.3d 709, 714 (Mo. App. 2024). However, under Section 441.040 a landlord is permitted to retake possession of a leased property after giving ten days' notice to vacate when the lease has been violated, such as overstaying the length of the lease, per Section 441.030.

Campus. S.M. was in such fear of violence from Deierling that she filed a personalized safety plan at ATSU. The medical facility also obtained a non-trespass order to keep Deierling from entering the premises. Thereafter, Deierling began repeatedly driving by S.M.'s business in downtown Kirksville. On August 30, S.M. saw him walking around her business and taking photographs. The drive-by incidents continued to occur in September 2023, after S.M. installed security cameras to better protect herself and maintain a record of Deierling's threatening conduct.

Viewing the evidence in the light most favorable to the judgment, there was sufficient evidence Deierling committed acts in a course of conduct that caused S.M. to fear physical harm. Deierling's actions went well beyond that of a minor argument with his landlord and escalated in a manner that reasonably caused S.M. to believe that he would hurt her. His verbal threats of deadly force against S.M. were reinforced by his open display of weapons outside her apartment building. Deierling repeatedly notified the police about S.M.'s threatening conduct and his theft of her property, and she sought help from medical professionals to protect her emotional and physical welfare.

The record also supports the circuit court's determination that Deierling's abusive conduct towards S.M. was unjustified. Although Deierling argued that he had legal rights to post the Castle Doctrine notice and to openly carry his weapons, this conduct must be viewed in context of the direct threats he made to shoot S.M. and to use deadly force against her. In light of Deierling's alarming course of conduct in threatening, following, and harassing S.M. and his testimony that he planned to return to Kirksville even though

8

he no longer lived there, the circuit court did not err in finding there was sufficient evidence of stalking to enter a full order of protection. We deny the point on appeal.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.